FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2026 APR 17 AM 9: 59

MARGARET BOTKINS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

JOSHUA ANDERS,

*Plaintiff,*

v.

FME EMPLOYMENT LLC, a Wyoming    Civil Action No. 26-CV-136

limited liability company; RYAN DANIEL,

individually; and VIKTOR VYUSHIN,

individually,

*Defendants.*

## COMPLAINT

*(Fair Labor Standards Act, 29 U.S.C. § 201 et seq.;*

*Wyoming Wage Payment Act, Wyo. Stat. § 27-4-104;*

*Breach of Contract; Fraud)*

## JURY TRIAL DEMANDED

Plaintiff Joshua Anders ("Plaintiff"), appearing *pro se*, brings this Complaint against Defendants FME Employment LLC ("FME"), Ryan Daniel ("Daniel"), and Viktor Vyushin ("Vyushin") (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action to recover unpaid minimum wages, unpaid overtime compensation, liquidated damages, and other relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Wyoming Wage Payment Act, Wyo. Stat. § 27-4-104, and for breach of contract and fraud under Wyoming law.

2. Defendants employed Plaintiff as a Senior Engineer from April 22, 2024 through August 12, 2024. Plaintiff worked approximately 42.5 to 45 hours per week during this period. Defendants never paid Plaintiff the overtime premium required by the FLSA for hours worked in excess of 40 per workweek, despite Plaintiff's contractual schedule requiring 42.5 hours per week and Plaintiff regularly working 45 hours per week. Upon termination, Defendants acknowledged in writing that they owed Plaintiff $7,850.00 in unpaid wages, less $1,493.92 for health insurance coverage, for a net amount of $6,356.08.

3. Defendants paid Plaintiff $0.00 for his final pay period, covering work performed from approximately August 1 through August 12, 2024 - approximately eight business days, or approximately 64 hours of work. By paying nothing for these hours, Defendants failed to pay Plaintiff even the federal minimum wage of $7.25 per hour, in violation of the FLSA. The total contractual wages owed for this and any other unpaid periods amount to

$6,356.08 (net), recoverable under the breach of contract and fraud claims set forth below.

4.    Defendants promised in a signed Agreement and Release dated August 12-13, 2024 (the "Release Agreement") to pay these wages within ten business days. The Release Agreement defines the "Effective Date" as the date of Plaintiff's signature, August 12, 2024. Defendants have paid nothing. This failure constitutes willful violation of the FLSA and breach of contract.

5.    Moreover, Defendants never intended to honor their promise of payment. Instead, Defendants used the false promise of payment to fraudulently induce Plaintiff to sign the Release Agreement, thereby waiving valuable legal rights. Defendant Ryan Daniel, as FME's owner and managing member, made these false representations directly to Plaintiff by executing the Release Agreement on FME's behalf, while Defendant Viktor Vyushin, as FME's director, originated and transmitted the Release Agreement through DocuSign for execution, knowingly participating in the scheme.

6.    The U.S. Department of Labor, Wage and Hour Division investigated this matter, contacted Defendants, and issued Plaintiff a letter dated October 17, 2024, confirming that Defendants refused to pay the wages owed and advising Plaintiff of his private right to sue under FLSA section 16(b).

## PARTIES

7.  Plaintiff Joshua Anders is an adult individual residing at 655 W Irving Park Rd, Apt 2811, Chicago, Illinois 60613. During his employment with Defendants, Plaintiff worked remotely from his then-residence in Johns Island, South Carolina.

8.  Defendant FME Employment LLC is a limited liability company organized under the laws of the State of Wyoming, whose registered agent is Registered Agents Inc, 30 N Gould St Ste R, Sheridan, Wyoming 82801, and whose mailing address is 34 North Franklin Avenue, Suite 687-1845, Pinedale, Wyoming 82941. FME was administratively dissolved by the State of Wyoming on July 9, 2025 for failure to pay taxes; however, a dissolved LLC remains subject to suit for pre-dissolution liabilities and may be served through its registered agent. Wyo. Stat. § 17-29-702. Upon information and belief, FME is affiliated with AVLAN PR LLC, a Puerto Rico entity doing business as "EHVA.AI" and located at 425 Carr 693 STE 1-348, Dorado, Puerto Rico 00646. The work Plaintiff performed as a Senior Engineer for FME was for the benefit of EHVA.AI. Defendants' personnel used ehva.ai email addresses in the course of FME's business, including Plaintiff's own work email (josh@ehva.ai) and Defendant Daniel's email (ryan@ehva.ai), and the U.S. Department of Labor identified the employer as "EHVA. AI, LLC/ FME Employment LLC" in its correspondence. The Dorado, Puerto Rico address of AVLAN PR LLC is consistent with Defendant Daniel's residence in Puerto Rico and his control over both entities. FME was Plaintiff's employer and is an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1). Upon information and belief, FME has annual gross revenues exceeding $500,000. FME engages in interstate commerce, including: employing personnel across multiple states (with

employees or contractors in South Carolina, California, and Puerto Rico, among other locations); utilizing interstate electronic payment systems (including DocuSign, ACH/wire transfers, and payroll processing) in the regular course of its business; maintaining customers, vendors, or clients in multiple states; and conducting its operations through interstate communications including email, video conferencing, and remote-access systems. In the alternative, Plaintiff was individually engaged in commerce within the meaning of 29 U.S.C. § 203(b): Plaintiff's work as a Senior Engineer involved regular use of interstate communications, remote access to systems located in other states, and work product that moved across state lines.

9.     Defendant Ryan Daniel is an individual residing in Puerto Rico. Daniel is the owner, operator, and managing member of FME. Daniel exercises complete control over FME's operations, finances, and employment decisions, including wage payments. Daniel controlled the payroll system and bank authorization for Plaintiff's wages, approved wage amounts and deductions, and had the sole authority to direct payment or nonpayment of Plaintiff's final wages. Daniel signed both the Employment Agreement and the Release Agreement on behalf of FME and is individually liable as an "employer" under the FLSA.

10.    Defendant Viktor Vyushin is an individual residing in Malibu, California. Vyushin is a director of FME who participates in management and control of FME's operations. The Employment Agreement identifies Vyushin as a "middle manager" with authority to approve overtime work - giving him direct control over Plaintiff's hours and compensation. Vyushin originated and transmitted both the Employment Agreement and the Release Agreement through DocuSign from his account

(viktor@fountainheadme.com), demonstrating his direct involvement in FME's employment and termination processes. Vyushin is individually liable as an "employer" under the FLSA.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

12. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's FLSA claim. Specifically, Plaintiff's Wyoming Wage Payment Act, breach of contract, and fraud claims derive from the same wage-nonpayment and release-negotiation facts underlying the FLSA claim, and are pleaded in the alternative under Fed. R. Civ. P. 8(d).

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because:

   (a)    Defendant FME is organized under Wyoming law and maintains its registered agent in this District;

   (b)    A substantial part of the events giving rise to the claim occurred in this District, including FME's decision not to pay wages owed; and

   (c)    Both the Employment Agreement and the Release Agreement contain mandatory forum selection clauses designating Wyoming courts as the exclusive forum for disputes. The Employment Agreement provides: "*any action brought to enforce any right or obligation under this Agreement shall be subject to the exclusive jurisdiction of the courts of the State of Wyoming, and that any such action may*

*be brought only in the United States District Court for the District of Wyoming or the Ninth Judicial State District Court in Wyoming.*" The Release Agreement provides: "*All matters litigated by, among, or between any of the Parties that involve this Agreement or any related matter hereunder shall be brought only in the United States District Court for the District of Wyoming or the Ninth Judicial State District Court in Wyoming. Each Party hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this Agreement.*" Each of Plaintiff's claims falls within the scope of these mandatory clauses: the FLSA and breach of contract claims seek to enforce wage obligations arising under the Employment Agreement and the Release Agreement, and the fraud claim arises from the inducement of the Release Agreement - all "matters... that involve" these agreements or "any related matter."

14. This Court has personal jurisdiction over all Defendants. FME is a Wyoming entity subject to general jurisdiction in this state. Wyoming's long-arm statute, Wyo. Stat. § 5-1-107, extends to the full limits of federal and state constitutional due process.

15. Daniel is subject to personal jurisdiction in Wyoming because he: (a) owns and operates a Wyoming LLC; (b) exercised final authority over FME's payroll and directed that Plaintiff's wages not be paid - a wage obligation of a forum-based company; (c) signed both the Employment Agreement and the Release Agreement on behalf of FME, each of which designates Wyoming courts as the mandatory exclusive forum and includes an express consent to Wyoming jurisdiction and waiver of venue objections; (d) knew of,

benefited from, and directly participated in the agreements containing the Wyoming-exclusive forum language, making it foreseeable he would be haled into the selected Wyoming forum on disputes involving those agreements; and (e) independent of the forum-selection clauses, purposefully directed the wage-nonpayment decision and release inducement into a Wyoming-centered contractual relationship by withholding wages owed by a Wyoming entity under Wyoming-law-governed agreements.

16. Vyushin is subject to personal jurisdiction in Wyoming because he: (a) serves as a director of a Wyoming LLC and participates in its management; (b) originated and transmitted through DocuSign both the Employment Agreement and the Release Agreement - contracts that designate Wyoming courts as the mandatory exclusive forum; (c) exercised supervisory authority over Plaintiff's hours and compensation as the designated "middle manager" with overtime approval authority; (d) knew of, benefited from, and directly participated in the agreements containing the Wyoming-exclusive forum language, making it foreseeable he would be haled into the selected Wyoming forum on disputes involving those agreements; and (e) is "closely related" to the contractual dispute at issue, having directly participated in both the onboarding and termination processes through which the forum-selection clauses were established. *See Newsome v. Gallacher*, 722 F.3d 1257, 1266 (10th Cir. 2013). Independent of the forum-selection clauses, Vyushin purposefully directed his conduct into Wyoming by managing operational decisions for a Wyoming entity and transmitting the very agreements that gave rise to this dispute.

17. In the alternative, if this Court determines that it lacks personal jurisdiction over either Daniel or Vyushin, Plaintiff respectfully requests severance and dismissal without

prejudice as to any such individual defendant pursuant to Fed. R. Civ. P. 21, so that this action may proceed against the remaining Defendants.

## FACTUAL ALLEGATIONS

### *Employment Relationship*

18.    On April 22, 2024, Plaintiff commenced employment with FME as a Senior Engineer. The governing written Employment Agreement (the "Employment Agreement," attached hereto as Exhibit A) was originated and transmitted to Plaintiff via DocuSign by Vyushin from his account on April 22, 2024 (DocuSign Certificate of Completion attached hereto as Exhibit C), executed by Plaintiff on April 25, 2024, and countersigned by Daniel on behalf of FME on April 27, 2024. Exhibit A to the Employment Agreement identifies April 22, 2024 as Plaintiff's start date, confirming that the employment relationship and wage obligations commenced on that date notwithstanding the later execution of the written agreement.

19.    The Employment Agreement specified that Plaintiff would be paid an annual salary of $155,000.00, based on an hourly rate of $74.52, payable semi-monthly on the 1st and 15th of each month.

20.    Plaintiff was scheduled to work five days per week, Monday through Friday, from 6:30 AM to 3:30 PM Pacific Time, with a 30-minute unpaid meal break - 8.5 hours per day, or 42.5 hours per week. Plaintiff regularly worked through his meal break, resulting in workdays of 9 hours and workweeks of 45 hours.

21. The Employment Agreement classified Plaintiff as an hourly employee paid at a rate of $74.52 per hour, and the Employment Agreement's Exhibit A contained detailed provisions governing overtime authorization, meal breaks, and rest breaks - provisions consistent with non-exempt status. Plaintiff's actual duties and FME's pay practices did not satisfy the requirements for any FLSA exemption.Despite Plaintiff's scheduled and actual hours exceeding 40 per week, Defendants' ADP payroll records (attached hereto as Exhibit G) consistently recorded Plaintiff at exactly 86.67 hours per semi-monthly pay period - a figure derived by dividing the semi-monthly salary of $6,458.34 by the $74.52 hourly rate, corresponding to exactly 40 hours per week (2,080 hours per year). Defendants never recorded, acknowledged, or compensated any overtime hours, even though Plaintiff's contractual schedule alone required 42.5 hours per week and Plaintiff regularly worked 45 hours per week by working through meal breaks. At no point during Plaintiff's employment did Defendants pay Plaintiff the overtime premium of one and one-half times his regular rate ($111.78 per hour) for any hours worked in excess of 40 per workweek, as required by 29 U.S.C. § 207(a).

22. Plaintiff performed all work remotely from his residence in South Carolina, as permitted by the Employment Agreement. Plaintiff's work involved regular use of interstate electronic communications, remote access to systems located in other states, and work product that was transmitted across state lines.

23. Throughout his employment, Plaintiff fully and competently performed all assigned duties and responsibilities.

24. On August 12, 2024, FME terminated Plaintiff's employment without prior notice.

*The Release Agreement and Promised Payment*

25.    On the same day as termination, August 12, 2024, FME presented Plaintiff with a document titled "Agreement and Release" (the "Release Agreement," attached hereto as Exhibit B). Vyushin originated and transmitted the Release Agreement to Plaintiff via DocuSign from his account at 2:19 PM Pacific Time (DocuSign Certificate of Completion attached hereto as Exhibit D). Plaintiff received, viewed, and signed the Release Agreement that same day at 3:10 PM Pacific Time.

26.    The Release Agreement expressly acknowledged that FME owed Plaintiff "all previously unpaid wages, salary, or earnings" in the amount of $7,850.00 gross.

27.    The Release Agreement specified that this amount would be reduced by $1,493.92 for "two months of health insurance coverage and any legally authorized withholdings and deductions," resulting in a net amount owed of $6,356.08.

28.    The Release Agreement stated that FME would "process a payment via ACH/Wire to a bank account on file" for the combined amount "[w]ithin ten (10) business days of the Effective Date." The Release Agreement defines the "Effective Date" as "the date of Releasor's signature below," which was August 12, 2024.

29.    Of the total $6,356.08, only $100.00 was designated as "Consideration" for the release of claims. The remaining $6,256.08 consisted entirely of wages already earned and owed to Plaintiff for work already performed.

30.    The Release Agreement contained an internal contradiction. Section 6(xii) required Plaintiff to "agree[] and warrant[] that Releasor has been paid all amounts owed" by

FME, while the Consideration section of the *same document* simultaneously acknowledged $7,850.00 in unpaid wages. This contradiction - requiring Plaintiff to warrant that he had been fully paid while simultaneously admitting he had not - further demonstrates that the Release Agreement was designed as a one-sided instrument to extract maximum concessions from Plaintiff while providing minimum accountability.

31. Plaintiff signed the Release Agreement on August 12, 2024.

32. Ryan Daniel signed the Release Agreement on behalf of FME on August 13, 2024, at 9:06 AM Pacific Time.

33. Ten business days from the Effective Date of August 12, 2024 was August 26, 2024.

34. Defendants failed to make any payment by August 26, 2024.

35. Defendants have made no payment whatsoever to Plaintiff since his termination on August 12, 2024.

### *Defendants' Refusal to Pay*

36. On or about August 27, 2024, Plaintiff contacted Defendants regarding the missing payment.

37. Defendants claimed they were "unable to pay" the acknowledged debt - just one day after the payment deadline, strongly suggesting that Defendants knew at the time of the promise that payment would not be forthcoming.

38. On August 28, 2024, Plaintiff filed a wage claim with the U.S. Department of Labor, Wage and Hour Division. Plaintiff also filed a wage claim with the South Carolina

Department of Labor, Licensing and Regulation, which declined jurisdiction by letter dated October 18, 2024 (attached hereto as Exhibit F).

39. The Department of Labor contacted Defendants and explained the FLSA wage requirements.

40. Despite the Department of Labor's intervention, Defendants refused to pay Plaintiff's wages.

41. On October 17, 2024, the Department of Labor issued Plaintiff a letter (attached hereto as Exhibit E) confirming that FME "was requested to pay any back wages owed but it did not agree to make additional payments" to Plaintiff, and advising Plaintiff of his private right to sue under FLSA section 16(b). The DOL letter identified the unpaid period as August 1-12, 2024. The DOL letter identified the employer as "EHVA. AI, LLC/ FME Employment LLC," reflecting the affiliated entities through which Defendant Daniel operated, as described in Paragraph 8 above.

### *The Release Agreement Is Unenforceable as a Release of Claims*

42. Although the Release Agreement purports to release claims under the FLSA and other statutes, the release-of-claims provisions are unenforceable for multiple independent reasons. Plaintiff nonetheless maintains that FME's promise to pay the $6,356.08 was a valid and binding contractual obligation, as set forth in the Second Claim for Relief below. Plaintiff further maintains that the wages were independently owed under the Employment Agreement for work performed, as set forth in the Third Claim for Relief below.

43.    Plaintiff pleads in the alternative that:

(a)    **FLSA Waivers Require Court or DOL Supervision:** The Release Agreement is void and unenforceable to the extent it purports to waive Plaintiff's rights to unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act, absent supervision by the Secretary of Labor under 29 U.S.C. § 216(c) or judicial approval of a bona fide FLSA settlement. Under Supreme Court precedent, FLSA rights cannot be privately waived in ways that undermine the statute's remedial purpose. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946).

The Tenth Circuit Court of Appeals has never ruled on whether FLSA settlements require court or DOL approval. *See Hawthorn v. Fiesta Flooring, LLC*, No. 1:19-cv-00019, 2020 WL 3085921, at *5 (D.N.M. June 10, 2020) (noting "the Tenth Circuit Court of Appeals has not yet settled this issue"); *Perez v. Denco Construction LLC*, No. 24-cv-02766 (D. Colo. Mar. 17, 2026) (same). The District of Wyoming has not addressed the question, making this an issue of first impression in this District.

District courts within the Tenth Circuit are divided into three camps. The first - led by the District of Kansas and certain judges in the District of Colorado - holds that all FLSA settlements require court approval under the framework established in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See, e.g., Barbosa v. National Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292 (D. Kan. Aug. 18, 2015); *Baker v. Vail Resorts Management Co.*, No.

13-cv-01649, 2014 WL 700096 (D. Colo. Feb. 24, 2014). The second - representing the emerging majority of Tenth Circuit district courts that have squarely addressed the issue - holds that court approval is not required for every FLSA settlement but is necessary where there is evidence of employer overreaching, unrepresented parties, or other indicia of unfairness. *See Fails v. Pathway Leasing LLC*, No. 18-cv-00308, 2018 WL 6046428, at *4 (D. Colo. Nov. 19, 2018); *Hawthorn*, 2020 WL 3085921, at *7; *Saari v. Subzero Engineering*, No. 2:20-cv-00849, 2021 WL 4245300 (D. Utah Sept. 17, 2021); *Lawson v. Procare CRS, Inc.*, No. 18-cv-00248, 2019 WL 112781 (N.D. Okla. Jan. 4, 2019). The third has questioned whether *Lynn's Food* has any textual basis in the FLSA at all. *See Martinez v. Back Bone Bullies Ltd.*, No. 21-cv-01245, 2022 WL 782782, at *2 (D. Colo. Mar. 15, 2022).

Regardless of which framework this Court adopts, the Release Agreement cannot waive Plaintiff's FLSA claims. Under the mandatory approval approach, the Release Agreement was neither supervised by the DOL nor approved by any court, and is therefore void. Under the "exceptional circumstances" approach adopted by the majority of Tenth Circuit district courts, this case presents precisely the type of employer overreaching that warrants judicial scrutiny and renders the release unenforceable: Defendants presented the Release Agreement on the day of termination without prior notice; offered only $100.00 in new consideration for a sweeping release of claims under numerous federal and state statutes; required Plaintiff to warrant he had been fully paid in the same document that acknowledged he had not been paid; and then failed to pay any portion of the

promised consideration - facts closely paralleling those in *Lynn's Food* itself, where the employer induced employees to sign broad releases for inadequate compensation. *See* 679 F.2d at 1352–54; *cf. Perez v. Denco Construction LLC*, No. 24-cv-02766 (D. Colo. Mar. 17, 2026) (finding settlement unenforceable even under the exceptional circumstances framework where employer offered $500 to 61 employees for broad releases and one plaintiff signed English-only documents he could not read). Under any analytical framework, the release-of-claims provisions cannot operate to waive Plaintiff's FLSA claims.

(b)   **Material Breach by Defendants:** Even if the release-of-claims provisions were otherwise enforceable, Defendants materially breached the Release Agreement by failing to pay the consideration expressly promised therein. A party that materially breaches a contract cannot enforce the other party's obligations under that contract. Because Defendants never paid any portion of the $6,356.08 they promised, the release-of-claims provisions are unenforceable against Plaintiff.

(c)   **Inadequate Consideration:** The Release Agreement offered only $100.00 as new "Consideration" for the release; the remaining amount consisted entirely of wages already earned and owed. Payment of wages already due cannot constitute consideration for a release of claims.

(d)   **Coercion:** The Release Agreement was presented on the day of termination, without prior notice, and Defendants used Plaintiff's earned wages as leverage to extract the release. This constitutes economic duress.

(e)    **Wages Independently Owed:** Regardless of the Release Agreement, Defendants owed Plaintiff earned wages under the Employment Agreement for work actually performed, and were required at minimum to pay all FLSA-required wages on the regular payday for the pay period covered.

### *Individual Liability of Daniel and Vyushin*

44.    Under the FLSA, the term "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Tenth Circuit has permitted FLSA suits for individual liability under this definition and applies an "economic reality" test focusing on operational control over the employment relationship.

45.    Defendant Daniel is individually liable as an "employer" under the FLSA because he:

- Owns and operates FME;

- Exercises complete control over FME's finances, operations, payroll systems, and bank authorizations;

- Has the power to hire and fire employees;

- Controls wage payment decisions, including the specific decision not to pay Plaintiff's final wages;

- Approved wage amounts and deductions and set payment due dates;

- Signed the Employment Agreement and Release Agreement on behalf of FME; and

- Had the sole authority to direct payment or nonpayment of Plaintiff's wages and chose not to pay.

46.    Defendant Vyushin is individually liable as an "employer" under the FLSA because he:

- Is a director of FME;

- Participates in management and control of FME's operations;

- Is identified in the Employment Agreement as a "middle manager" with authority to authorize overtime work, giving him direct control over Plaintiff's hours and compensation;

- Originated and transmitted both the Employment Agreement and the Release Agreement through DocuSign, demonstrating his direct involvement in employment and separation decisions; and

- Exercises supervisory authority over employees, including control over the terms and conditions of Plaintiff's employment.

## FIRST CLAIM FOR RELIEF

### *Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.*

### *(Against All Defendants)*

47.    Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

48.    At all relevant times, FME was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1), having annual gross revenues exceeding $500,000 and employing personnel who engage in commerce

or in the production of goods for commerce, including through interstate communications, electronic payment systems, and the employment of workers across state lines. In the alternative, Plaintiff was individually "engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(b), as his work regularly involved interstate electronic communications, remote access to systems in other states, and work product transmitted across state lines.

49. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e).

50. At all relevant times, each Defendant was an "employer" of Plaintiff within the meaning of 29 U.S.C. § 203(d).

51. The FLSA requires employers to pay covered employees at least the federal minimum wage for all hours worked. 29 U.S.C. § 206. Wages required by the FLSA are due on the regular payday for the pay period covered.

52. During the period from approximately August 1 through August 12, 2024, Plaintiff worked approximately eight business days, or approximately 64 hours. Defendants paid Plaintiff $0.00 for this work. By failing to pay any wages for these hours, Defendants failed to pay Plaintiff even the federal minimum wage of $7.25 per hour, resulting in unpaid minimum wages of at least $464.00 (64 hours × $7.25). In addition, throughout Plaintiff's entire employment from April 22, 2024 through August 12, 2024 - a period of approximately 16 weeks - Defendants failed to pay Plaintiff the overtime premium required by 29 U.S.C. § 207(a) for hours worked in excess of 40 per workweek. Plaintiff's contractual schedule required 42.5 hours per week (8.5 hours per day, five

days per week), and Plaintiff regularly worked 45 hours per week by working through his meal break. Defendants' payroll records (see Exhibit G) systematically recorded Plaintiff at exactly 86.67 hours per semi-monthly pay period - the mathematical equivalent of exactly 40 hours per week - thereby concealing the overtime hours that Defendants were required to compensate at one and one-half times Plaintiff's regular rate. At a minimum, Plaintiff is owed 2.5 hours of overtime per week at $111.78 per hour (1.5 × $74.52) for approximately 16 weeks, totaling not less than $4,471.20 in unpaid overtime compensation. To the extent Plaintiff worked 45 hours per week, the unpaid overtime totals not less than $8,942.40.

53. Defendants' violation was willful. Defendants knew they owed Plaintiff wages, acknowledged the debt in writing in the Release Agreement, promised to pay within ten business days, and then deliberately refused to pay despite intervention by the Department of Labor. Such conduct demonstrates, at minimum, a reckless disregard for whether Defendants' conduct violated the FLSA. Because Defendants' violation was willful, the three-year statute of limitations under 29 U.S.C. § 255(a) applies.

54. Defendants lacked good faith and had no reasonable grounds for believing their conduct complied with the FLSA within the meaning of 29 U.S.C. § 260. Defendants acknowledged in writing that wages were owed, promised to pay, and then paid nothing - conduct that cannot be characterized as a good-faith effort at compliance.

55. To the extent Defendants assert that Plaintiff was exempt from the FLSA's minimum wage requirements as a salaried professional, administrative, or computer employee, any such exemption is an affirmative defense that is fact-intensive and cannot be resolved on

the pleadings. Moreover, even exempt employees must receive their guaranteed salary; Defendants' complete failure to pay any compensation for the final pay period undermines the salary-basis requirement for any claimed exemption.

56. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover unpaid minimum wages and overtime compensation (not the full contractual wage amount, which is sought under the contract claims below), plus an additional equal amount as liquidated damages. Specifically, Plaintiff seeks:

(a) Unpaid minimum wages for all hours worked during the period for which Plaintiff was paid $0.00, in an amount to be proven at trial but not less than $464.00;

(b) Unpaid overtime compensation for all hours worked in excess of 40 in any workweek throughout Plaintiff's entire employment from April 22, 2024 through August 12, 2024, in an amount to be proven at trial but not less than $4,471.20;

(c) An additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b); and

(d) Costs of the action.

## SECOND CLAIM FOR RELIEF

### *Breach of the Release Agreement*

### *(Against Defendant FME)*

57. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

58. The Release Agreement constitutes a valid and binding contract between Plaintiff and FME with respect to FME's promise to pay Plaintiff the specified wages. As set forth above, Plaintiff maintains that the release-of-claims provisions are separately void and unenforceable; however, FME's payment obligation constitutes a valid contractual commitment that Plaintiff is entitled to enforce. In the alternative, if the Court determines that the Release Agreement was enforceable in its entirety, FME's failure to pay is nonetheless a breach. In the further alternative, if the Court determines that the Release Agreement is void in its entirety, Plaintiff seeks rescission of the Release Agreement and recovery of the unpaid wages under the Employment Agreement and/or unjust enrichment.

59. Payment of the $6,356.08 was the primary consideration for Plaintiff's execution of the Release Agreement and the release of claims contained therein. FME's complete failure to pay constitutes both a material breach and a failure of consideration, supporting rescission or non-enforcement of the release-of-claims provisions.

60. Under the Release Agreement, FME expressly promised to pay Plaintiff as follows: "*Within ten (10) business days of the Effective Date, FME will process a payment via ACH/Wire to a bank account on file in the combined amount of $7,850.00 (less $1,493.92*

*for two months of health insurance coverage and any legally authorized withholdings and deductions), representing $100.00 as the 'Consideration' for this Agreement plus all previously unpaid wages, salary, or earnings, minus legally authorized withholdings and deductions, if any."* (Release Agreement, Section 1.) The net amount owed was $6,356.08. The Effective Date was August 12, 2024, making payment due no later than August 26, 2024.

61. Plaintiff performed all conditions required of him under the Release Agreement, including signing the agreement and refraining from the conduct prohibited therein.

62. FME breached the Release Agreement by failing to make any payment to Plaintiff by the August 26, 2024 deadline or at any time thereafter.

63. As a direct and proximate result of FME's breach, Plaintiff has suffered damages in the amount of at least $6,356.08, plus consequential damages including overdraft fees, credit damage, and other financial harm that were foreseeable at the time of contracting.

64. The Release Agreement is a written contract subject to Wyoming's ten-year statute of limitations for actions on written contracts. Wyo. Stat. § 1-3-105(a)(i). This action is timely.

## THIRD CLAIM FOR RELIEF

### *Breach of the Employment Agreement*

### *(Against Defendant FME)*

65. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

66. In the alternative to the Second Claim for Relief, and regardless of the enforceability of the Release Agreement, the Employment Agreement constitutes a valid and binding contract between Plaintiff and FME.

67. Under the Employment Agreement, FME agreed to pay Plaintiff an annual salary of $155,000.00, based on an hourly rate of $74.52, payable semi-monthly on the 1st and 15th of each month.

68. Plaintiff performed all duties and responsibilities required of him under the Employment Agreement from April 22, 2024 through his termination on August 12, 2024.

69. FME breached the Employment Agreement by failing to pay Plaintiff the wages earned for his final pay period(s), in the amount acknowledged by FME in the Release Agreement as $7,850.00 gross ($6,356.08 net after the agreed health insurance deduction).

70. As a direct and proximate result of FME's breach, Plaintiff has suffered damages in the amount of at least $6,356.08, plus consequential damages including overdraft fees, credit damage, and other financial harm.

71.    The Employment Agreement is a written contract subject to Wyoming's ten-year statute of limitations. Wyo. Stat. § 1-3-105(a)(i). This action is timely.

## FOURTH CLAIM FOR RELIEF

### *Fraud (Fraudulent Inducement)*

### *(Against All Defendants)*

72.    Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

73.    On August 12, 2024, during Plaintiff's termination process, Defendant Daniel caused Plaintiff to be presented with the Release Agreement - a written document stating that FME would "process a payment via ACH/Wire to a bank account on file" in the net amount of $6,356.08 "[w]ithin ten (10) business days of the Effective Date." The same document expressly acknowledged the wages as "previously unpaid." Daniel executed the Release Agreement on FME's behalf on August 13, 2024, adopting and reaffirming the written promise of payment.

74.    Defendant Vyushin, as FME's director, directly participated in the execution of this scheme. Vyushin originated the DocuSign envelope for the Release Agreement on August 12, 2024 at 2:19 PM Pacific Time and transmitted it to Plaintiff for signature. By initiating and transmitting the Release Agreement - which contained the false promise of payment - Vyushin facilitated the fraudulent inducement of Plaintiff's signature. Upon information and belief, Vyushin, as a director of FME involved in its management and operational decisions, was aware on or before August 12, 2024 that FME did not intend

to pay Plaintiff's wages within the promised timeframe, yet he originated and transmitted the document containing the false promise. This allegation is made upon information and belief because the facts of Vyushin's internal knowledge and communications with Daniel are uniquely within Defendants' control and are expected to be confirmed through discovery.

75. At the time these promises were made and adopted, Defendants had no present intent to cause the promised payment to be made as stated. Defendants made the promise to induce Plaintiff to sign a broad release waiving valuable legal rights. Under Wyoming law, a promise made with a present, undisclosed intention not to perform constitutes actionable fraud, because the promisor's present state of mind is treated as an existing fact. *See Meyer v. Ludvik*, 680 P.2d 1038, 1042 (Wyo. 1984). The following circumstances support the inference of contemporaneous fraudulent intent:

(a) Within one day of the payment deadline, Daniel told Plaintiff that FME was "unable to pay" the acknowledged debt, strongly suggesting that FME's financial inability predated the promise;

(b) The Release Agreement's internal contradiction - acknowledging $7,850 in unpaid wages while simultaneously requiring Plaintiff to warrant he had been fully paid - suggests the document was drafted to extract concessions rather than to memorialize a genuine agreement;

(c) Defendants refused to pay even after the Department of Labor contacted them and explained the FLSA wage requirements, demonstrating a sustained and deliberate refusal; and

(d)    No partial payment, alternative arrangement, or good-faith effort to satisfy the debt has ever been made.

76.    Plaintiff signed the Release Agreement on August 12, 2024 in reliance on Daniel's and FME's written promise of payment by a date certain. Plaintiff's reliance was justifiable because: (a) the promise was made by his employer in a formal written agreement; (b) the Release Agreement explicitly acknowledged the debt and specified a payment method and deadline; and (c) Plaintiff had no reason at the time of signing to believe his employer would refuse to honor a signed contract.

77.    As a direct and proximate result of Defendants' fraud, Plaintiff suffered damages including: loss of wages; loss of legal rights by temporarily refraining from pursuing FLSA and other claims in reliance on the promised payment; delay in pursuit of remedies that allowed Defendants additional time during which assets may have been dissipated; overdraft fees; credit damage; and emotional distress. These damages are distinct from and in addition to the expectancy damages recoverable for breach of contract: the fraud caused Plaintiff to waive rights and delay legal action, which are harms independent of the mere nonpayment of a contractual debt.

78.    Defendants' conduct was willful, wanton, and malicious, entitling Plaintiff to punitive damages under Wyoming law.

## FIFTH CLAIM FOR RELIEF

### *Violation of the Wyoming Wage Payment Act, Wyo. Stat. § 27-4-104*

### *(Against Defendant FME)*

79.    Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

80.    Both the Employment Agreement and the Release Agreement contain choice-of-law clauses providing that they shall be governed by the laws of the State of Wyoming. FME is a Wyoming limited liability company. Accordingly, Wyoming law governs the employment relationship and the obligations arising therefrom.

81.    Under the Wyoming Wage Payment Act, Wyo. Stat. § 27-4-104(a), whenever an employee is discharged, the employer shall pay whatever wages are due "no later than the employer's usual practice on regularly scheduled payroll dates."

82.    FME's regular payroll practice, as specified in the Employment Agreement, was semi-monthly payment on the 1st and 15th of each month. FME discharged Plaintiff on August 12, 2024. Accordingly, FME was required under § 27-4-104(a) to pay all wages due to Plaintiff no later than the next regularly scheduled payroll date of September 1, 2024.

83.    FME failed to pay Plaintiff any wages by September 1, 2024, or at any time thereafter. FME has paid Plaintiff $0.00 since his termination on August 12, 2024, in violation of Wyo. Stat. § 27-4-104(a).

84. FME's violation was willful. FME acknowledged in writing that wages were owed, promised to pay within ten business days, and then deliberately refused to pay despite intervention by the U.S. Department of Labor.

85. Pursuant to Wyo. Stat. § 27-4-104(b), because Plaintiff has been discharged and has cause to bring suit for wages earned and due, upon establishing the amount justly due, the Court shall allow Plaintiff interest on the past due wages at the rate of eighteen percent (18%) per annum from the date of termination, August 12, 2024, together with a reasonable attorney fee and all costs of suit. This statutory interest rate applies as an alternative to any general pre-judgment interest on the contract claims, to the extent not duplicative.

86. Plaintiff's claim under the Wyoming Wage Payment Act is subject to Wyoming's ten-year statute of limitations for statutory obligations. Wyo. Stat. § 1-3-105(a)(i). This action is timely.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

(a) Against all Defendants, jointly and severally: unpaid minimum wages and unpaid overtime compensation under the FLSA for all hours worked during the period for which Plaintiff was paid $0.00 and for all overtime hours worked throughout Plaintiff's employment for which Plaintiff was not paid the required overtime premium, in an amount to be proven at trial but not less than $464.00 in unpaid

minimum wages and not less than $4,471.20 in unpaid overtime, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

(b)   Against Defendant FME: compensatory damages for breach of the Release Agreement and/or the Employment Agreement and/or unpaid wages under the Wyoming Wage Payment Act, Wyo. Stat. § 27-4-104, in the amount of $6,356.08 (to the extent not duplicative of the FLSA recovery), plus consequential damages in an amount to be proven at trial;

(c)   Against all Defendants, jointly and severally: compensatory damages for fraud in an amount to be proven at trial, to the extent not duplicative of other recoveries;

(d)   Against all Defendants: punitive damages for fraud in an amount sufficient to punish Defendants and deter similar conduct;

(e)   Pre-judgment interest on unpaid wages at the rate of eighteen percent (18%) per annum from August 12, 2024, as mandated by Wyo. Stat. § 27-4-104(b), and/or pre-judgment interest on the contract damages at the maximum rate allowed by law (Plaintiff acknowledges that pre-judgment interest, FLSA liquidated damages, and § 27-4-104(b) interest are generally not all recoverable for the same period and does not seek duplicative recovery);

(f)   Post-judgment interest at the rate prescribed by 28 U.S.C. § 1961;

(g)   Costs of the action pursuant to 29 U.S.C. § 216(b) and Wyo. Stat. § 27-4-104(b), and a reasonable attorney fee pursuant to Wyo. Stat. § 27-4-104(b);

(h)     A declaration that the release-of-claims provisions of the Release Agreement are void and unenforceable against Plaintiff, including but not limited to any purported waiver of FLSA claims, which is void absent supervision by the Secretary of Labor under 29 U.S.C. § 216(c) or judicial approval;

(i)     In the alternative, rescission of the Release Agreement in its entirety, with recovery of unpaid wages under the Employment Agreement and/or unjust enrichment; and

(j)     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 15, 2026

Respectfully submitted,

*(signature)*

**JOSHUA ANDERS**

*Plaintiff, Pro Se*

655 W Irving Park Rd, Apt 2811

Chicago, IL 60613

Email: legal@joshanders.com

Phone: (804) 916-9666

## VERIFICATION

I, Joshua Anders, verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April 15, 2026

*(signature)*

**JOSHUA ANDERS**

## LIST OF EXHIBITS

**Exhibit A:** Employment Agreement (executed April 25-27, 2024)

**Exhibit B:** Agreement and Release (executed August 12-13, 2024)

**Exhibit C:** DocuSign Certificate of Completion - Employment Agreement (Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A)

**Exhibit D:** DocuSign Certificate of Completion - Release Agreement (Envelope ID: AFF722B4-0A48-4A68-AA4B-684F8D53FC53)

**Exhibit E:** U.S. Department of Labor, Wage and Hour Division Letter (October 17, 2024)

**Exhibit F:** South Carolina Department of Labor, Licensing and Regulation - Jurisdiction Declination (October 18, 2024)

**Exhibit G:** ADP Earnings Statements (April 30, 2024 through July 31, 2024)