DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

## EMPLOYMENT AGREEMENT

1.  **Parties.**  The parties to this Employment Agreement (the "Agreement") are FME Employment LLC ("FME"), a limited liability company organized under the laws of the State of Wyoming, whose address is 34 North Franklin Avenue, Suite 687, Pinedale, Wyoming 82941, and Joshua Anders ("Employee"), whose address is 2857 Maritime Forest Dr, Johns Island, SC 29455.  FME and Employee are each a "Party" to this Agreement, and together constitute the "Parties."

2.  **Purpose of this Agreement.**  The purpose of this Agreement is to set forth the terms and conditions by which the Parties agree that FME will employ Employee to serve as an at-will employee for FME.

3.  **AT-WILL EMPLOYMENT.  FME AND EMPLOYEE AGREE THAT THIS EMPLOYMENT IS AT-WILL, WITHOUT ANY FIXED TERM.  FME AND EMPLOYEE AGREE THAT THIS EMPLOYMENT AGREEMENT AND EMPLOYEE'S EMPLOYMENT CAN BE TERMINATED BY EITHER PARTY AT ANY TIME, FOR ANY REASON, OR FOR NO REASON, WITH OR WITHOUT NOTICE, AND WITH OR WITHOUT CAUSE.**

4.  **Position/Duties.**  FME agrees to employ Employee to perform the duties and functions of the position as set forth in the description attached hereto as Exhibit A. Employee shall render to the very best of Employee's ability services to and on behalf of FME, and shall undertake diligently all duties and functions assigned by FME.  Employee's duties and functions, including as set forth in the attached job description, are subject to amendments, revisions, and additions, in the sole discretion of FME.

5.  **Nature of Employment.**  Employee's employment with FME is full time.  Employee agrees not to engage in any other employment, business, or activity that could reasonably be understood to conflict with Employee's duties, responsibilities, and obligations pursuant to this Agreement.  Employee shall immediately notify FME of any potential or adverse conflicts of interest. Notwithstanding anything to the contrary in this Agreement, Employee shall be permitted to continue to operate Jevin Canders LLC - Electronics e-tailer and phone provider and to personally provide consulting services.

6.  **Promotion of FME's Interest.** Employee acknowledges and agrees to devote Employee's best efforts and full business time to Employee's employment with FME, consistent with FME's best interests, in compliance with all applicable laws, and subject to FME's policies and procedures.  Employee further agrees not to use any information Employee may acquire with respect to the business or affairs of FME for Employee's own purposes or for any purposes other than those associated with FME and Employee's duties and functions for FME.

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

7.  **Confidentiality and Non-Disclosure.** Employee acknowledges that during the normal course of employment with FME, Employee will have access to information of a confidential and/or trade secret nature that has great value to FME and constitutes a substantial basis and foundation upon which the business of FME is based. "Confidential Information" means and includes contracts, marketing plans, strategic plans, financial information including products, services or business, licenses, contracts, patent applications, proprietary data, trade secrets, know-how, technology, client lists, customer lists, prospect lists, and any other proprietary information relating to the past, present or future research, development and business of FME and any related entities, whether proprietary to FME or any related entities, or obtained by FME from others and documents, materials and other information, in tangible and intangible form. Confidential Information does not include (a) information that is generally available to and known by the public at the time of disclosure to Employee, provided that such disclosure is through no direct or indirect fault of Employee or persons acting on Employee's behalf and (b) information that was known to Employee prior to commencing employment with FME. Employee will not, without the written consent of FME, during employment or at any time after the termination of employment, disclose, copy, make use of, or remove from FME premises, Confidential Information except as may be required in the course of Employee's employment with and for the benefit of FME. Employee specifically acknowledges that any use of Confidential Information by persons not employed by FME or who are not authorized by FME to use the information provides such persons an unfair competitive advantage which they would not have had without the use of Confidential Information. In the event that Employee is required in a civil, criminal or regulatory proceeding to disclose any part of the Confidential Information, Employee will give FME prompt (within 48 hours) written notice of the request to permit FME to seek an appropriate remedy or to waive the Employee's compliance with the provisions of this Agreement in regard to the request.

8.  **Ownership of Property.** Employee agrees that all documents, reports, files, analyses, drawings, designs, tools, equipment, plans (including, without limitation, marketing and sales plans), proposals, customer lists, computer software or hardware, and similar materials that are made by Employee or come into Employee's possession by reason of Employee's employment FME and during the term of Employee's employment with FME are the property of FME ("FME Property") and will not be used by Employee in any way adverse to the interests of FME. Employee also acknowledges that in the course of Employee's employment, Employee will learn about FME's business, services, materials, programs and products and the manner in which they are developed, marketed, served and provided, as well as come to know the names, contact information and preferences of customers of FME, all of which Employee also acknowledges is FME Property. Employee knows and acknowledges FME has invested considerable time and money in developing its programs, agreements, offices, representatives, services, products and marketing techniques, and well as its knowledge the names, contact information and preferences of customers of FME, and that they are proprietary, unique, original and confidential. Employee further acknowledges that these materials must be and will be keep secret from persons other than FME so as not to aid FME's competitors. Employee will not allow any such documents or things, or any copies, reproductions or summaries thereof to be delivered to or used by any third party without the specific consent of FME. Employee

2

4869-9336-8761, v. 2

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

agrees to deliver to FME or its designee, upon demand, and in any event upon the termination of Employee's employment, all of such documents and things which are in Employee's possession or under Employee's control, and not to use such materials and information subsequent to Employee's employment with FME. Employee acknowledges that appropriation and use of FME's customer information would cause FME irreparable harm, and hereby agrees that injunctive relief would be appropriate and may be issued against Employee by a court of competent jurisdiction in the event that Employee takes or seeks to use FME's customer information contrary to FME's instruction or after employment. The results and proceeds of Employee's services under this Agreement shall be considered a work made for hire, and FME shall be deemed the author of such results and proceeds. FME shall be the sole and exclusive owner and copyright proprietor of all rights and title in and to the results and proceeds of Employee's services hereunder in whatever stage of completion. FME's rights in the results and proceeds shall not be affected by the termination or expiration of this Agreement. If for any reason the results and proceeds of Employee's services hereunder are determined at any time not to be a "work made for hire" or otherwise the sole and exclusive property of FME, Employee hereby irrevocably transfers and assigns to FME all right, title and interest therein, including all copyrights, as well as all renewals and extensions thereto.

9.    **Compensation.** In consideration of the performance of Employee's duties and functions as set forth herein and in Exhibit A, Employee will be paid as compensation the amount set forth in Exhibit A, less any deductions or withholdings required by law, to be paid in accordance with Exhibit A or, if not set forth therein, in accordance with FME's regular payroll schedule. FME may from time-to-time, in FME's sole discretion, adjust Employee's compensation, including the terms and conditions thereof. Nothing herein shall be deemed to require any increase in or guarantee to Employee's compensation as set forth in Exhibit A or as adjusted thereafter, as Employee's compensation remains in the sole discretion of FME.

10.    **PTO.** Employee will receive paid time off (PTO) consistent with Exhibit A or, if not set forth therein, consistent with any PTO policy FME has in force or adopts during Employee's employment, provided Employee is eligible under the policy. In the event that Employee's employment is terminated, Employee expressly acknowledges and agrees that Employee is not eligible for payment of or entitled to receive any accrued but unpaid PTO.

11.    **Additional Benefits.** Employee will receive any additional benefits consistent with Exhibit A or, if not set forth therein, consistent with any benefit plans FME had in force or adopts for the benefit of its employees or certain of its employees, provided Employee is eligible under the plan or plans, including health insurance, dental insurance, vision insurance, and life insurance. Provided Employee is eligible under the plan or plans, Employee may elect to participate in any voluntary benefit plans FME chooses to implement and offer, although Employee's rights under the benefit plans shall be subject to and governed by the terms of those plans. Employee expressly acknowledges and agrees that FME may terminate any or all such benefit plans at any time and may choose not to adopt any other plans.

3

4869-9336-8761, v. 2

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

12. **Expenses.** Employee is not authorized to incur any expenses on behalf of FME, or for its benefit, except upon prior written authorization from FME. If Employee incurs any such priorly approved expenses, FME will promptly reimburse Employee for said expenses provided that Employee furnishes receipts for all such expenses in accordance with any of FME's then-existing policies or procedures.

13. **Termination.** Consistent with Employee's employment as an at-will employee, this Agreement and Employee's employment can be terminated by either party at any time, for any reason, or for no reason, with or without notice, and with or without cause.

14. **Incapacity.** Employee's employment and rights to compensation and benefits under this Agreement shall terminate if Employee is unable to perform the duties and functions of Employee's position due to death or disability, and Employee's heirs, beneficiaries, successors, or assigns shall not be entitled to any of the compensation or benefits to which Employee is entitled under this Agreement except to the extent: a) expressly provided in this Agreement; b) required by law; or c) such benefit plans or policies under which Employee is covered provide a benefit to Employee's heirs, beneficiaries, successors, or assigns.

15. **Non-Solicitation.** Employee agrees during Employee's employment by FME and for one year following the termination of Employee's employment, not to recruit, engage in passive hiring efforts, solicit or induce any person or entity who during the period within one year prior to the termination of Employee's employment with FME, was an employee or independent contractor of FME or any related entity to leave or cease employment or other relationship with FME or any related entity for any reason whatsoever or hire or engage the services of such person for Employee in any business substantially similar to or competitive with that in which FME or any related entity was engaged during Employee's employment.

16. **General Provisions.**

   A. *Amendments.* Unless otherwise stated herein, this Agreement may not be amended or modified in any respect except by written agreement, signed by the Parties.

   B. *Approvals, Consents, and Determinations.* Unless otherwise set forth in this Agreement or in any of FME's policies or procedures, any approvals, consents or determination required by FME under this Agreement must be undertaken by Ryan Daniel (ryan@ehva.ai) or anyone else designated by Ryan Daniel (ryan@ehva.ai) in writing.

   C. *Assignment.* Employee expressly agrees Employee's rights and obligations under this Agreement are personal, and not assignable to another person without written prior consent of FME, unless otherwise expressly set forth herein. The Parties agree that the rights and obligations of FME will not be assigned to another person or entity absent the mutual written agreement of the Parties.

4

4869-9336-8761, v. 2

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

D.    *Attorneys' Fees.*  In the event either party commences legal action alleging any violation of this Agreement, the non-prevailing party shall pay all costs and reasonable attorneys' fees incurred by the prevailing party in connection with such action.

E.    *Certification regarding Conflicting Agreements.*  Employee also certifies that employment with FME does not and will not breach any agreement or duty that Employee has to anyone concerning employment, competition, or confidential information belonging to others.

F.    *Compliance with Laws.*  Employee shall keep informed of and comply with all federal, state, and local laws, regulations, and ordinances applicable to the operation of FME's business and Employee's performance under this Agreement.

G.    *Consultation with Independent Counsel.*  Employee and FME acknowledge each has had the opportunity to be represented by counsel in connection with this Agreement and the matters contemplated herein.  Accordingly, any rule of law or decision that would require interpretation of any claimed ambiguities in this Agreement against the party that drafted the Agreement have no application and are expressly waived.

H.    *Counterparts.* This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same agreement, but this Agreement shall become effective only when such counterparts have been signed by each of the parties. A facsimile or .pdf signature shall be deemed to be, and shall have the same force and effect as, an original signature.

I.    *Entirety of Agreement.*  This Agreement and the document(s) referenced or incorporated herein constitute the entire agreement between the Parties with respect to all of the matters associated with Employee's employment with FME, and its execution has not been induced by, nor do any of the parties rely upon or regard as material, any representations or writings whatsoever that are not referenced or incorporated herein.

J.    *Governing Law, Jurisdiction, and Venue.* This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Wyoming. The Parties agree that any action brought to enforce any right or obligation under this Agreement shall be subject to the exclusive jurisdiction of the courts of the State of Wyoming, and that any such action may be brought only in the United States District Court for the District of Wyoming or the Ninth Judicial State District Court in Wyoming. To the extent legally possible, the parties knowingly and expressly consent to the personal jurisdiction of the courts of the State of Wyoming.

K.    *Notices.*  All notices, requests, demands, or other communications ("Notices") required or permitted to be given by one party to the other party under this

4869-9336-8761, v. 2

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

Agreement shall be given in writing by personal delivery or registered mail, postage prepaid, to the addresses set forth in Section 1 ("Parties"), or at such other address as may be given by such party to the other party in writing.

L.   *Return of Property.*   Upon the termination of this Agreement or Employee's dismissal, Employee is required to immediately return to FME any and all of FME's property that is in Employee's possession, and is prohibited from using any such property for any purpose whatsoever.

M.   *Severability.*   Should any portion of this Agreement be judicially determined to be illegal or unenforceable, the remainder of the Agreement shall continue in full force and effect, and the Parties may renegotiate the terms affected by the severance.

N.   *Titles, Headings, and Captions.*   All titles, headings and captions used in this Agreement have been included for administrative convenience only, and do not constitute matters to be construed in interpreting this Agreement

O.   *Waiver.*   No waiver by either Party of a right or remedy hereunder shall be deemed to be a waiver of any other right or remedy, or of any subsequent right or remedy of the same kind.

**THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK.**

4869-9336-8761, v. 2

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

**Signatures.**    The parties to this Agreement, either personally or through their duly authorized representatives, have executed this Agreement on the dates set out below, and certify that they have read, understood, and agreed to the terms and conditions of this Agreement.

**EMPLOYER/ORGANIZATION:**

FME

NAME: Ryan Daniel

TITLE: Owner

DocuSigned by:

*Ryan Daniel*

FA9901535EA9410...

4/27/2024

Date

**EMPLOYEE:**

NAME: Joshua Anders

DocuSigned by:

*Joshua Anders*

3EE034C5308D49C...

4/25/2024

Date

7

4869-9336-8761, v. 2

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

## EXHIBIT A

1.      **Employee**: Joshua Anders

2.      **Start Date:** 04/22/2024

3.      **Position:** Sr. Engineer, which may be performed remotely form a location determined by Employee

4.      **Days, Hours and Overtime**. Absent contrary direction from FME, Employee shall be scheduled to work five (5) days per week. Employee's schedule shall be set at Monday-Friday from 6:30 am to 3:30 pm PST. Employee will be provided an uninterrupted unpaid meal period of at least 30 minutes if Employee works more than five (5) hours in a workday. Employee is entitled, and is hereby authorized, to take an unpaid, uninterrupted thirty (30) minute meal break for every shift that lasts more than five (5) hours. Employee should commence meal breaks before the end of Employee's fifth hour of work. If Employee works more than ten (10) hours in a workday, Employee is entitled, and is hereby authorized, to two thirty (30) minute meal breaks, and a second meal break should commence before the end of Employee's tenth hour of work. If six (6) hours of work will complete the day's work, Employee may voluntarily choose to waive the authorization to take a meal break. If Employee works in excess of ten (10) hours but less than twelve (12), the employee can voluntarily choose to waive the authorization to take a second meal break, as long as Employee has taken the first meal break.

> Employee is entitled to, and is hereby authorized to, take paid rest breaks at the rate of a net ten (10) minutes for every four (4) hours worked, or majority fraction of a 4-hour period (see below). Employee is entitled to take rest breaks as follows:
>
> ·        For shifts from 3½ up to 6 hours:  One 10-minute period;
>
> ·        For more than 6 hours up to 10 hours:  Two 10-minute periods;
>
> ·        For more than 10 hours up to 14 hours:  Three 10-minute periods.

Rest breaks should be taken to the extent practicable in the middle of each four (4) hour period of work and Employee is not required to clock out/in for rest breaks. Employee may not combine rest breaks or add them to Employee's meal break(s). Rest breaks cannot be used to permit Employee to arrive ten (10) minutes late or leave ten (10) minutes early.

If for any reason Employee is not provided or is unable to take a required meal period Employee must immediately notify Christopher Cowan via email at chriscowan@fountianheadme.com, with an explanation of what happened to cause the missed break.

Employee may not work more than eight (8) hours in a day or forty (40) hours in a week without express authorization from "middle managers," as designated below or Ryan Daniel (ryan@ehva.ai).  The names of the middle managers can be changed at any time upon written notice to Employee.  If Employee works overtime, Employee will be paid as follows:

8

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

- For hours worked in excess of 40 hours per workweek or in excess of eight hours per workday, Employee shall be paid at a rate of one and one-half times Employee's regular rate of pay;

- For hours worked in excess of 12 per workday, Employee shall be paid at two times Employee's regular rate of pay;

- For the seventh consecutive day of work, Employee shall be paid at a rate of one and one-half times their regular rate of pay for the first eight hours worked and double time for all hours worked thereafter.

5.      **Fringe Benefits**.  Employee shall be entitled to a contribution by FME towards its group health plan as outlined in Employee's executed offer letter. Employee may elect to decline said coverage or purchase different coverage to replace or supplement FME-provided insurance, but is responsible for any differences in costs that exceed the costs of the plan offered by FME where costs exceed the costs of plan offered by FME.  FME shall have the right to modify or eliminate this and any other fringe benefits for Employee at its sole discretion upon written notice to Employee.

6.      **Compensation**.  If Employee works the hours referenced above, Employee's anticipated yearly compensation would be $155,000.00.  This is based on an hourly rate of $74.52. If Employee works overtime as authorized by FME, the yearly compensation could be greater. Employee will be paid semi-monthly on FME's normal payroll dates, the 1st and 15th of each month.  The monthly salary is based on Employee working the number of hours per week, as listed below, at an hourly rate as listed below.

"Middle" Manager(s): Viktor Vyushin (viktor@ehva.ai)

Employee's projected annual compensation: $155,000.00

9

4869-9336-8761, v. 2

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

# NOTICE TO EMPLOYEE
*Labor Code section 2810.5*

## EMPLOYEE

Employee Name: Joshua Anders

Start Date: 04/22/2024

## EMPLOYER

Legal Name of Hiring Employer: FME Employment LLC

Is hiring employer a staffing agency/business (e.g., Temporary Services Agency; Employee Leasing Company; or Professional Employer Organization [PEO])?  □ Yes   ☑ No

Other Names Hiring Employer is "doing business as" (if applicable):

Physical Address of Hiring Employer's Main Office:
34 N Franklin Ave, Ste 687-1845, Pinedale, WY 82941

Hiring Employer's Mailing Address (if different than above):

Hiring Employer's Telephone Number: (844) 288-7757

If the hiring employer is a staffing agency/business (above box checked "Yes"), the following is the other entity for whom this employee will perform work:

Name:

Physical Address of Main Office:

Mailing Address:

Telephone Number:

## WAGE INFORMATION

Rate(s) of Pay: $74.52            Overtime Rate(s) of Pay: 1.5x regular rate (projected at $

Rate by (check box):   ☑ Hour    □ Shift    □ Day    □ Week    □ Salary    □ Piece rate    □ Commission

□ Other (provide specifics):

Does a written agreement exist providing the rate(s) of pay?   (check box)   ☑ Yes    □ No

If yes, are all rate(s) of pay and bases thereof contained in that written agreement?   □ Yes   ☑ No

Allowances, if any, claimed as part of minimum wage (including meal or lodging allowances):

(If the employee has signed the acknowledgment of receipt below, it does not constitute a "voluntary written agreement" as required under the law between the employer and employee in order to credit any meals or lodging against the minimum wage. Any such voluntary written agreement must be evidenced by a separate document.)

Regular Payday: 1st and 15th of calendar month

DLSE-NTE (rev 9/2014)

EXHIBIT A

DocuSign Envelope ID: 66FD4C2A-C91E-4BC7-9FD7-0A6FCC77C69A

## WORKERS' COMPENSATION

Insurance Carrier's Name: AmTrust North America, Inc.

Address: 6363 Katella Avenue, Cypress, CA 90630

Telephone Number: (866) 272-9267

Policy No.: TWC3941505

☐ Self-Insured (Labor Code 3700) and Certificate Number for Consent to Self-Insure: _____

## PAID SICK LEAVE

Unless exempt, the employee identified on this notice is entitled to minimum requirements for paid sick leave under state law which provides that an employee:

    a. May accrue paid sick leave and may request and use up to 3 days or 24 hours of accrued paid sick leave per year;

    b. May not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and

    c. Has the right to file a complaint against an employer who retaliates or discriminates against an employee for
        1. requesting or using accrued sick days;
        2. attempting to exercise the right to use accrued paid sick days;
        3. filing a complaint or alleging a violation of Article 1.5 section 245 et seq. of the California Labor Code;
        4. cooperating in an investigation or prosecution of an alleged violation of this Article or opposing any policy or practice or act that is prohibited by Article 1.5 section 245 et seq. of the California Labor Code.

The following applies to the employee identified on this notice: *(Check one box)*

☐ 1. Accrues paid sick leave only pursuant to the minimum requirements stated in Labor Code §245 et seq. with no other employer policy providing additional or different terms for accrual and use of paid sick leave.

☐ 2. Accrues paid sick leave pursuant to the employer's policy which satisfies or exceeds the accrual, carryover, and use requirements of Labor Code §246.

☑ 3. Employer provides no less than 24 hours (or 3 days) of paid sick leave at the beginning of each 12-month period.

☐ 4. The employee is exempt from paid sick leave protection by Labor Code §245.5. (State exemption and specific subsection for exemption):_____

## ACKNOWLEDGEMENT OF RECEIPT
### (Optional)

Ryan Daniel

(PRINTS NAME of Employer representative)

Ryan Daniel

(SIGNATURE of Employer Representative)
4/27/2024

(Date)

Joshua Anders

DocuSigned (PRINT NAME of Employee)

Joshua Anders

3EE034C53... (SIGNATURE of Employee)
4/25/2024

(Date)

The employee's signature on this notice merely constitutes acknowledgement of receipt.

Labor Code section 2810.5(b) requires that the employer notify you in writing of any changes to the information set forth in this Notice within seven calendar days after the time of the changes, unless one of the following applies: (a) All changes are reflected on a timely wage statement furnished in accordance with Labor Code section 226; (b) Notice of all changes is provided in another writing required by law within seven days of the changes.

DLSE-NTE (rev 9/2014)

EXHIBIT A