Docusign Envelope ID: AFF722B4-0A48-4A68-AA4B-684F8D53FC53

# AGREEMENT AND RELEASE

THIS AGREEMENT AND RELEASE (the "Agreement") is by and between FME Employment LLC ("FME"), a limited liability company organized under the laws of the State of Wyoming, whose address is 34 North Franklin Avenue, Suite 687, Pinedale, Wyoming 82941, and Joshua Anders ("Releasor"), whose address is 2857 Maritime Forest Dr, John's Island, SC 29455. FME and Releasor are each a "Party" to this Agreement, and together constitute the "Parties." The effective date of this Agreement is the date of Releasor's signature below ("Effective Date").

## RECITALS

**WHEREAS**, Releasor previously performed services for or was employed by FME, but Releasor shall no longer provide such services or shall no longer be employed as of 08/12/2024 ("Separation Date").

**WHEREAS**, FME and Releasor desire to enter into this Agreement and resolve any claims or controversies existing or that may exist between them as of the Effective Date, as set forth below, including all claims or controversies that in any way relate to or arise from Releasor's employment with, independent contractor relationship with, services to, or departure from, FME.

**NOW, THEREFORE**, in consideration of (i) the Consideration set forth in Section 1, and (ii) the undertakings and releases contained herein, the Parties agree as follows:

CONSIDERATION.

Within ten (10) business days of the Effective Date, FME will process a payment via ACH/Wire to a bank account on file in the combined amount of $7,850.00 (less $1,493.92 for two months of health insurance coverage and any legally authorized withholdings and deductions), representing $100.00 as the "Consideration" for this Agreement plus all previously unpaid wages, salary, or earnings, minus legally authorized withholdings and deductions, if any.

RELEASE, DISCHARGE AND WAIVER.

(a)     In consideration of the benefits described in Section 1 above, and except as to the obligations of FME arising herein, Releasor, for himself/herself and his/her predecessors, descendants, heirs, devisees, administrators, executors, personal representatives, wards, agents, assigns, and successors, and each of their insurers, and attorneys, and those affiliated or at interest with any of them (collectively "**Releasors**"), hereby finally, unconditionally, irrevocably and absolutely releases, acquits, waives, remises, and forever discharges FME, and any and all related entities, subsidiaries, affiliates, predecessors, and successors, as well as any of their current or former trustees, officers, agents, representatives, Releasors, and attorneys, and those affiliated or at interest with any of them (collectively the "**FME Group**"), from any and all actions, suits, debts, covenants, controversies, charges, damages, judgments, obligations, guarantees, costs, expenses, fees (including attorneys' fees and court costs), counterclaims, claims, demands, causes of action and liabilities of each and every kind whatsoever existing as of the Effective Date, whether known or unknown, absolute or contingent, matured or un-matured, foreseeable or unforeseeable, presently existing or hereafter discovered, at law, in equity or otherwise, whether arising by statute, common law, in contract, in tort or otherwise, including but not limited to any claim associated

1

EXHIBIT B

Docusign Envelope ID: AFF722B4-0A48-4A68-AA4B-684F8D53FC53

with Medicare, that Releasor may now have or that were or could have been asserted by Releasor as of the Effective Date.

(b)    Without in any manner limiting the above, Releasor specifically waives and releases FME and FME Group from all claims Releasor may have as of the Effective Date regarding claims or rights arising under federal laws, including but not limited to the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, the Family and Medical Leave Act (FMLA), the Equal Pay Act (EPA), the Fair Labor Standards Act (FLSA), the Employee Retirement Income Security Act of 1974 (ERISA), the Age Discrimination in Employment Act as amended, 29 U.S.C. § 621, et seq. (ADEA), the Older Workers Benefit Protection Act, 29 U.S.C. § 626 (OWBPA), the Worker Adjustment and Retraining Act, the Occupational Safety and Health Act, the Sarbanes-Oxley Act, and Title VII of the Civil Rights Act of 1964, as well as all claims Releasor may have as of the Effective Date arising under the statutory and common laws of the State of Wyoming, including but not limited to the Fair Employment Practices Act (FEPA), and the statutory and common laws of any other state where Releasor may have resided or performed services for FME.  Releasor also specifically waives and releases FME and the FME Group from any and all claims Releasor may have related or pursuant to any of FME's rules, policies, and procedures.  It is agreed that this Agreement provides benefits to which Releasor is not otherwise entitled, and that Releasor has consulted competent counsel of Releasor's own selection prior to signing this Agreement.

(c)    Releasor further agrees and understands that the release of claims contained in this Agreement is a General Release, and that any reference to specific claims or statutes arising out of or in connection with Releasor's relationship with and/or departure from FME is not intended to limit the release of claims. Releasor expressly agrees and understands this General Release means that Releasor is releasing, remising, and discharging FME Group from and with respect to all claims, whether known or unknown, asserted or unasserted, and whether or not the claims arise out of or in connection with Releasor's relationship with and/or departure from FME, or otherwise.

(d)    The parties agree that nothing herein shall be construed as prohibiting, limiting, waiving, or impeding Releasor's right to file a charge or complaint with the United States EEOC, NLRB, OSHA, the Wyoming Department of Workforce Services, or any other federal, state, or local governmental agency or commission, or to participate in any investigation by any of those entities.  However, the parties agree, and Releasor acknowledges, that to the extent permitted by law, Releasor is waiving any right that Releasor may have to recover in any proceeding that results from a charge filed on Releasor's behalf with any of those entities.

(e)    To the fullest extent permitted by law, Releasor waives any right or ability to be a plaintiff or representative in class or collective action, or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which FME or the FME Group is a party.

FULL AND COMPLETE SETTLEMENT.

This Agreement is accepted in full and complete settlement of any and all liability claimed by the Parties, regardless of the adequacy of the aforesaid Consideration, undertakings, and

2

EXHIBIT B

Docusign Envelope ID: AFF722B4-0A48-4A68-AA4B-684F8D53FC53

releases, which the Parties agree are satisfactory, meaningful, binding upon, and enforceable against the Parties.

### EXPRESS DENIAL OF LIABILITY.

Nothing about the Consideration, undertakings, or releases contained in this Agreement is an admission of liability. The Parties deny any liability to one another for any amounts on any grounds.

### REPRESENTATIONS, WARRANTIES AND COVENANTS.

Releasor represents, warrants, and covenants to FME that:

(i) Releasor is the owner of each and every claim, cause of action, right and chose in action compromised, settled, or released pursuant to this Agreement and Releasor has not heretofore previously assigned, sold, transferred, conveyed, or encumbered same;

(ii) Releasor has read the foregoing Agreement and knows and understands its contents, and Releasor has had the opportunity to consult, or has consulted, with an attorney retained to represent Releasor in connection with the terms and implications of this Agreement, and Releasor has executed this Agreement under Releasor's own free will and action;

(iii) Releasor understands and agrees that any damages sustained may be permanent and progressive, and that recovery therefrom is uncertain and indefinite, but this Agreement is accepted in full and complete settlement of all damages, including the unknown or unsuspected consequences thereof, and also to unknown damages whether suspected or unsuspected, regardless of the adequacy of the aforesaid payment;

(iv) Releasor understands and agrees this Agreement constitutes the valid and legally binding obligations of Releasor, enforceable in accordance with its terms and conditions;

(v) Releasor has not relied upon any representation or statement by FME, or anyone else, in executing this Agreement, except for the representations expressly set forth in this Agreement;

(vi) Releasor understands and agrees FME is not responsible for payment of any expenses or bills related to any damages that Releasor alleges that Releasor suffered arising in any way out of Releasor's employment with, services to, or departure from FME;

(vii) Releasor has conducted Releasor's own analysis concerning this Agreement;

3

Docusign Envelope ID: AFF722B4-0A48-4A68-AA4B-684F8D53FC53

(viii)    Releasor understands and agrees that if Releasor or someone acting on Releasor's behalf files or causes to be filed any claim, charge, complaint, or action against FME or FME Group, Releasor expressly waives any right to recover any damages or other relief from FME or FME Group, including costs and attorneys' fees, except where such a waiver of individual relief is prohibited by law;

(ix)    Releasor agrees that Releasor's acceptance of this Agreement is knowing and voluntary, and that Releasor was not induced by FME through fraud, misrepresentation, or a threat to withdraw or alter the terms of this Agreement;

(x)    Releasor acknowledges that as a result of his or her relationship with the FME, Releasor obtained knowledge of and gained access to information regarding FME's contracts, marketing plans, strategic plans, financial information including products, services or business, licenses, contracts, patent applications, proprietary data, trade secrets, know-how, technology, and other proprietary information relating to the past, present or future research, development and business of FME, whether proprietary to FME, or obtained by FME from others, and documents, materials and other information, in tangible and intangible form (collectively, "Confidential Information"). Releasor agrees to hold all Confidential Information strictly in confidence and not to use, copy, disclose or distribute any such Confidential Information to any person, corporation, company, partnership or other entity, including existing or potential competitors of FME.

(xi)    Releasor understands and agrees that neither Releasor nor any person acting at Releasor's direction or request or with Releasor's cooperation or assistance shall at any time publicly criticize or disparage FME or its Releasors, officers, agents, or trustees. Releasor understands and agrees that this is a material term of this Agreement, and any such disparagement shall constitute a breach of this Agreement, entitling FME to all remedies at law; and

(xii)    Releasor agrees and warrants that Releasor has been paid all amounts owed to Releasor by FME related in any way to Releasor's employment with or services to FME, including but not limited to any compensation, payment, or benefits under any FME benefit plan, practice, policy, or contract, and that FME has no further obligations to Releasor, financial or otherwise, except as expressly set forth herein, and except that Releasor shall have the right to continue under any group health plan as provided under the Consolidated Omnibus Budget Reconciliation Act of 1985 and pursuant to WYO. STAT. § 9-3-105.

4

EXHIBIT B

Docusign Envelope ID: AFF722B4-0A48-4A68-AA4B-684F8D53FC53

## MISCELLANEOUS.

1.02 **Cooperation.** The Parties shall cooperate fully to execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

1.03 **Release Disclaimer.** Each Party acknowledges that no promise or representation of any kind has been made to him, her, it, or anyone acting for him, her, or it, except those promises expressly stated in this Agreement. The Parties fully understand this Agreement contains legally binding provisions and constitutes a full, complete and final release of all of the specific and general claims herein described in this Agreement.

1.04 **Amendments.** This Agreement may be amended only by agreement of the Parties in writing, and signed by each Party.

1.05 **Confidentiality of Agreement.**

(a)    To the extent permitted by law, Releasor shall keep the nature and terms of this Agreement and the amount of Consideration forever confidential.

(b)    FME shall not authorize anyone to disclose the nature and terms of this Agreement or the amount of the Consideration, except as may be required by law or court order.

(c)    Releasor and FME may disclose as necessary the terms of this Agreement to his, her, or its attorneys and tax preparers/advisors.

1.06 **No Third-Party Beneficiaries.** Except as expressly set forth herein, this Agreement shall not confer any rights or remedies upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

1.07 **Assignments.** No Party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other Parties hereto. Any assignment made in violation of this Agreement shall be void *ab initio*.

1.08 **Notices.** All notices, requests, demands, or other communications ("Notices") required or permitted to be given by one party to the other party under this Agreement shall be given in writing by personal delivery or registered mail, postage prepaid, to the addresses set forth in the opening paragraph of this Agreement, or at such other address as may be given by such party to the other party in writing.

1.09 **Governing Laws and Venue.** The rights and obligations of the Parties hereunder shall be interpreted, construed, and enforced in accordance with the laws of the State of Wyoming, without regard to its choice of law principles. All matters litigated by, among, or between any of the Parties that involve this Agreement or any related matter hereunder shall be brought only in the United States District Court for the District of Wyoming or the Ninth Judicial State District Court in Wyoming. Each Party hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this Agreement, or any

5

Docusign Envelope ID: AFF722B4-0A48-4A68-AA4B-684F8D53FC53

related matter in either of the above-identified courts, and the defense of an inconvenient forum to the maintenance of such claim in any such court.

     1.10   **Substantive Recitals.** The Parties hereto agree that the provisions set forth in the RECITALS are substantive provisions of this Agreement and are not mere recitals.

     1.11   **Taxes.** Releasor agrees that the payments being made to Releasor under this Agreement may be subject to income tax, social security, and similar withholding obligations required by law, which were not paid by way of withholdings taken from certain payments. Releasor agrees to indemnify FME and the FME Group and hold them harmless for any claims, taxes, penalties, interest or attorneys' fees incurred by them or ordered against them by any taxing authority to the extent such liability arises from Releasor's failure to pay taxes on the benefits afforded to Releasor, including the Consideration paid pursuant to this Agreement. Should Releasor receive notification from any taxing authority that unpaid taxes on the Consideration are allegedly due, Releasor shall notify FME immediately in writing in a manner that ensures confirmation of receipt of said correspondence.

     1.12   **Return of Property.** Releasor agrees to return all of FME's property to FME within five (5) days of the Execution Date.

     1.13   **Captions.** The section captions set forth in this Agreement are for the convenience of the Parties and do not modify, limit, or otherwise affect the express provisions of the Agreement.

     1.14   **Consultation with Independent Counsel.** **EACH PARTY HERETO ACKNOWLEDGES THAT THIS AGREEMENT CONTAINS LEGALLY BINDING PROVISIONS AND THAT NO PARTY HERETO HAS ENGAGED ANY COUNSEL TO PROVIDE LEGAL SERVICES FOR THE OTHER PARTY'S BENEFIT IN CONNECTION WITH THE NEGOTIATION AND EXECUTION OF THIS AGREEMENT. FME ADVISES RELEASOR TO CONSULT WITH HIS OR HER OWN COUNSEL REGARDING THIS AGREEMENT. EACH PARTY HERETO REPRESENTS THAT HE, SHE, OR IT HAS CONSULTED WITH COUNSEL, OR HAS HAD AN OPPORTUNITY TO CONSULT WITH COUNSEL, IN NEGOTIATING AND EXECUTING THIS AGREEMENT AND THAT HE, SHE, OR IT HAS EITHER CONSULTED WITH HIS, HER, OR ITS OWN COUNSEL OR CONSCIOUSLY DECIDED NOT TO CONSULT WITH HIS, HER, OR ITS OWN COUNSEL.**

     1.15   **Attorney Fees and Costs.** Each Party specifically agrees to bear his, her, or its own attorneys' fees, costs, and expenses incurred as a result of the Agreement.

     1.16   **Enforcement.** The Parties agree that in the event any action or court proceeding is brought by either Party to enforce the obligations under this Agreement, the prevailing party shall be entitled to recover any reasonable attorneys' fees, together with court and collection costs.

     1.17   **No Waiver.** No waiver of any right of any Party hereto shall be effective unless the same is in a writing specifically identifying the right being waived, and executed by the Party sought to be charged therewith, and no such waiver shall be deemed to be or construed as a further or continuing waiver of any such term, provision, or condition, or as a waiver of any other term, provision, or condition of this Agreement, unless specifically so stated in such written waiver.

EXHIBIT B

Docusign Envelope ID: AFF722B4-0A48-4A68-AA4B-684F8D53FC53

1.18    **Severability.** It is understood and agreed that, in the event any provision in this Agreement is held void or unenforceable for any reason, it shall in no way affect the enforceability of the remaining provisions. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement, a provision as similar in its terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

1.19    **Construction.** The Parties agree that this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.

1.20    **Misrepresentation.** In entering into this Agreement, each Party assumes the risk of any inadvertent misrepresentation or mistake, and acknowledges his, her, or its understanding that he, she, or it may hereafter discover claims or facts in addition to or different from those he, she, or it now knows or believes to be true with respect to the matters related herein.

1.21    **Additional Documents.** The Parties agree to execute any and all other documents reasonably necessary to carry out the provisions of this Agreement.

1.22    **Entire Agreement.** This Agreement contains the entire agreement between the Parties with regard to the matters set forth herein and supersedes all prior agreements, understandings, and statements, written or oral, with respect thereto. All obligations, agreements, and understandings with respect to the subject matter of this Agreement are expressly set forth in this Agreement. No representations, promises, inducements, agreements or statements, other than those expressly set forth herein, were relied upon by the parties in entering this Agreement. This Agreement may not be modified except by a written agreement signed by all parties hereto. The requirement for written modification of this Agreement may not be modified by oral agreement.

1.23    **Counterparts.** This Agreement may be executed by the Parties in counterparts, each of which when so executed and delivered shall be an original. Photostatic, facsimile, .pdf, or similar reproduction of a writing signed by a person shall be regarded as signed by the person for all purposes of this Agreement. All such counterparts shall together constitute one and the same instrument.

**THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK.**

EXHIBIT B

Docusign Envelope ID: AFF722B4-0A48-4A68-AA4B-684F8D53FC53

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed on its behalf as of the date first above written.

**EMPLOYEE/CONTRACTOR/RELEASOR:**

Signed by:

*Joshua Anders*

JOSHUA ANDERS

8/12/2024

Date

**EMPLOYER/ORGANIZATION:**
FME

Signed by:

*Ryan Daniel*

NAME, TITLE

Ryan Daniel

8/13/2024

Date

8

EXHIBIT B