**Joshua Anders**
**Settlement Agreement and Release**
Anders v. FME Employment LLC et al. | No. 2:26-cv-00136-KHR | District of Wyoming

Counter-draft of Anders dated October 21, 2026, in response to the Defendants' draft of October 5, 2026, revised to reflect the Wage Payment received on October 9, 2026. This draft restates the counter-draft of October 10, 2026 with two changes: $17.01 is added to the costs in Section 2.2, and the date in Section 10 is October 28, 2026.

This Agreement resolves the employment and payment dispute and the additional claims released under Section 4 among Joshua Anders (Anders), FME Employment LLC (FME), Ryan Daniel Blackman, also known as Ryan Daniel and named in the Action as Ryan Daniel (Blackman), and Viktor Vyushin (Vyushin). FME, Blackman, and Vyushin are the Defendants. Each signatory is a Party. The Execution Date is the date Anders signs, which Anders will do only after he has received the signed counterparts of every Defendant and the waivers of service described in Section 10. The releases and dismissal are subject to the payment and judicial conditions below.

## 1 Background and settlement scope

Anders and FME entered an Employment Agreement executed April 25 and 27, 2024, and an Agreement and Release executed August 12 and 13, 2024 (the Prior Agreements). Anders's employment ended August 12, 2024. The latter agreement specified $7,850.00 less $1,493.92 for health insurance and legally authorized withholdings and deductions, including $100.00 identified as release consideration. On October 7, 2026, Blackman wrote that FME would pay the outstanding balance under the Agreement and Release and that the payment was not conditioned on signing any settlement agreement. On October 8, 2026, Vyushin initiated a Same Day ACH transfer of $6,356.08 to Anders from an account of Navlan PR LLC, which Anders received on October 9, 2026 (the Wage Payment). The Parties wish to resolve the remaining claims asserted in Anders v. FME Employment LLC, Ryan Daniel, and Viktor Vyushin, No. 2:26-cv-00136-KHR, United States District Court for the District of Wyoming (the Action).

The Action asserts Fair Labor Standards Act (FLSA) minimum-wage and overtime claims, liquidated damages, breach of both Prior Agreements, fraudulent inducement, Wyoming wage-payment claims, interest, fees, costs, and related relief. This Agreement is a compromise of those claims; it does not adjudicate any allegation, concede personal employer liability, or establish any relationship between FME and another business. The Parties make no representation that a court has already approved this settlement.

## 2 Payment, guarantee, and tax responsibilities

2.1 Wage Payment. The Wage Payment of $6,356.08 equals the $7,850.00 in unpaid wages and separation compensation acknowledged in the Agreement and Release less the $1,493.92 health-insurance deduction applied there, and was paid in full without withholding. It is credited once against the unpaid balance under the Agreement and Release. The Wage Payment was unconditional, is not refundable or recoverable from Anders, and is not subject to any deduction or offset, whether or not this Agreement is executed, approved, or completed. The insurance deduction shall not be taken again. Employer payroll taxes and transfer fees are obligations of FME and do not reduce the Wage Payment. The payment by Navlan PR LLC on FME's behalf satisfies FME's wage obligation to the extent received.

2.2 Additional Consideration. As the separately negotiated consideration supporting the release of claims beyond the unpaid wages (Section 4.7), FME shall pay, without withholding: (a) interest on the Wage Payment at eighteen percent per annum from August 12, 2024 to October 9, 2026, the date the Wage Payment was received, as provided by Wyo. Stat. § 27-4-104(b), which is $2,469.99 ($6,356.08 × 18% × 788/365); and (b) Anders's documented costs of the Action, $1,909.65, consisting of the filing fee ($405.00), delivery of the Complaint to the Clerk ($75.79), process-server fees ($352.00 to ABC Legal and $290.85 to CIG, LLC), skip-trace fees to locate the individual Defendants ($250.00 to One Source Process and $104.00 to DocuSearch), printing and Certified Mail postage for the twelve Rule 4(d) waiver requests mailed October 3, 2026 ($415.00), and Certified Mail postage for the October 5, 2026 mailing to FME's registered agent ($17.01), receipts for which Anders will supply on request. Items (a) and (b) together are the Additional Consideration, $4,379.64. The Wage Payment and the Additional Consideration together are the Payment.

2.3 Guarantee. Blackman absolutely, unconditionally, and irrevocably guarantees payment of the Additional Consideration as a primary obligor and not merely as a surety, and Anders may proceed against Blackman without first proceeding against FME. The guarantee is given as consideration for the releases in Section 4 and is not an admission that Blackman was Anders's employer or is personally liable on any released claim. Vyushin is not obligated to fund the settlement.

2.4 Timing and method. The Additional Consideration shall be received in cleared funds within five business days after the Execution Date by ACH or wire to the account that received the Wage Payment, or to another account Anders confirms in writing. Any payment made before execution toward the Payment shall be credited once. If Blackman or another person pays on FME's behalf, that payment satisfies FME's obligation to the extent received.

2.4.1 Bank delay. If the Additional Consideration is initiated within the period in Section 2.4 and, within that period, FME or Blackman gives Anders written confirmation from the sending bank showing the amount, the date initiated, and the receiving account, but the funds are not received within that period because of an error of a bank that is outside FME's control, then the delay is not a breach, this Agreement remains in effect, and the deadline in Section 2.4 is extended by ten business days. Additionally, Anders must show proof the funds were not received. The obligation to pay the Additional Consideration is satisfied only when cleared funds are received by Anders. If the funds are returned to the sender, FME shall re-initiate the payment within two business days after learning of the return. This Section extends no other date.

2.5 Withholding, reporting, and tax responsibilities. The Wage Payment was made directly by ACH without using FME's former payroll platform and without withholding. That method does not change the legal character of the Wage Payment as wages or excuse any employer tax, remittance, or reporting obligation of FME, which FME shall satisfy through an accountant, another provider, or other lawful means. No employee withholding that FME did not withhold shall be recovered from Anders or deducted from the Additional Consideration. The Additional Consideration is not wages and shall be paid without withholding. No wage payment shall be relabeled as nonwage or independent-contractor compensation merely to avoid payroll obligations.

Anders shall timely report the Payment as required and pay all federal, state, local, territorial, or other taxes legally imposed on him arising from the Payment to the appropriate taxing authorities, after crediting amounts properly withheld and remitted. He acknowledges that receiving funds without withholding, where lawful, does not make those funds tax-free or relieve him of applicable estimated-payment or return-filing obligations. No Defendant guarantees Anders's tax treatment or an after-tax amount. Each Party shall reasonably cooperate in supplying information and correcting tax documents without requiring disclosure of unrelated private tax information.

To the extent permitted by law, Anders shall reimburse FME for an amount FME is finally required to pay that represents Anders's own personal income-tax liability on the Wage Payment arising solely from Anders's failure to report or pay it, after credit for taxes already withheld, remitted, paid, or otherwise credited and with no double recovery. This limited undertaking does not cover employer taxes; FME's withholding, remittance, or reporting obligations; or penalties, interest, or costs attributable to a Defendant's noncompliance. FME shall give prompt notice of an assessment and a reasonable opportunity to contest it through available procedures. This undertaking neither binds a taxing authority nor shifts a statutory employer obligation to Anders, and it does not permit unilateral withholding of earned wages or settlement funds.

2.6 Wages independently due. The unpaid wages were independently due and were paid without condition, as Blackman's email of October 7, 2026 stated. Nothing in this Agreement conditions the Wage Payment, or conditioned it, on Anders signing a release, obtaining court approval, remaining silent, or taking any position in another proceeding. Once this Agreement is executed, the deadline in Section 2.4 is not postponed by the approval process. Anders acknowledges receipt of the Wage Payment on October 9, 2026.

**3 Judicial approval and settlement completion**

Within ten business days after the Execution Date, the Parties shall jointly request approval of the FLSA compromise and appropriate disposition of the Action, and shall file a notice of settlement asking the Court to hold pending deadlines in abeyance, including the deadlines described in Plaintiff's Notice of Mailing filed October 5, 2026. Their submission shall accurately identify the claims, disputed issues, wage and damages calculations, the Wage Payment already made, the Additional Consideration, the broader release and any additional disclosed claims, and reasons the compromise is fair. They shall not invent disputed facts or defenses to obtain approval. FME shall act through licensed counsel for court filings as required; Anders may act pro se.

The Approval Condition is satisfied only when the Court enters an order approving this settlement or expressly determines that approval is unnecessary and permits disposition pursuant to these terms. No Party represents that private signatures alone eliminate the statutory restrictions on FLSA waivers.

The Completion Date is the later of satisfaction of the Approval Condition and Anders's receipt of the full Additional Consideration.

If the Court requires a material change, the Parties shall confer in good faith for fourteen calendar days. No amount or material obligation changes without all Parties' written consent. If approval is denied and no amendment is signed within that period, or if the Approval Condition has not been satisfied within ninety days after the Execution Date, either side may terminate the

uncompleted settlement by written notice. The releases will not take effect, the Action may continue, and all payments remain credited against the corresponding obligations. The Wage Payment shall not be reclaimed. No Party must accept a new payment amount or an unrelated restriction to obtain approval.

**4 General release and disclosure of known claims**

4.1 Released Parties.

The Released Parties are FME, Blackman, and Vyushin; their respective past and present parent companies, subsidiaries, affiliates, and entities under their direct or indirect ownership or control or common control, as of the acts at issue or the date Anders signs; their respective predecessors and successors; and the past and present owners, members, managers, directors, officers, employees, agents, representatives, and insurers of those entities, in their individual and representative capacities. Control means the power to direct management or policies through ownership, agreement, or otherwise. AVLAN PR LLC and Navlan PR LLC, including businesses conducted by them under the names EHVA.AI or InboundCD, are also expressly included regardless of whether any affiliation is established. Trade names identify the applicable operating entity and do not constitute separate legal persons. Naming or describing a Released Party admits no ownership, affiliation, joint employment, alter ego, agency, or liability. Each Released Party is an intended third-party beneficiary entitled to enforce this Section, subject to its conditions and exceptions.

4.2 General release.

Effective only on the Completion Date and to the fullest extent lawfully permitted, Anders releases and forever discharges every Released Party from all claims, complaints, grievances, demands, causes of action, liabilities, debts, obligations, damages, and requests for personal relief that Anders owns or may assert in his individual capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, filed or unfiled, accrued or contingent, arising from acts, omissions, transactions, or events occurring on or before the date Anders signs this Agreement. This includes matters never communicated to a Released Party or submitted to any court, arbitrator, agency, or other forum. Subject to Section 4.4, the release extends beyond the Action and the employment relationship to any prior dealings, conduct, or events involving a Released Party, including employment, services, compensation, hours, termination, the Prior Agreements, nonpayment, contract, tort, fraud, misrepresentation, and legally waivable statutory claims, together with legally releasable requests for wages, overtime, liquidated damages, compensatory or punitive damages, interest, fees, costs, or equitable relief. FLSA claims are released only within the disposition permitted by the Court under Section 3. To the extent lawful, Anders also waives personal monetary recovery on released claims pursued on his behalf in another proceeding. No provision bars a complaint, charge, report, testimony, or participation protected by Section 4.4 or Section 7, binds a government agency, or waives an award or remedy that cannot lawfully be waived.

4.3 Unknown claims and ownership.

Anders understands that he may later discover facts or claims different from those he presently knows or believes to exist. Subject to Section 4.4 and applicable law, he intends this release to encompass those unknown claims arising from events on or before his signature date. This provision does not purport to dispense with any special statutory waiver requirement. Anders

represents that he has not sold, assigned, transferred, or otherwise disposed of a claim covered by this release. He does not purport to release claims owned by another person or governmental body.

4.4 Excluded rights.

This Section does not release enforcement of this Agreement, claims arising from acts or omissions after Anders signs, rights that cannot lawfully be waived, vested benefits that cannot lawfully be waived, nonwaivable workers' compensation or unemployment rights, or claims under the Age Discrimination in Employment Act. It does not restrict truthful testimony, compliance with lawful process, protected concerted activity, legally protected government reporting or cooperation, or a government award that cannot lawfully be waived. Section 7 controls over any inconsistent interpretation. No disclosure obligation below requires revealing a legally protected confidential or anonymous report, an agency communication protected from disclosure, an attorney-client communication, attorney work product, or a sealed matter that cannot lawfully be disclosed.

4.5 Disclosure before signing.

Before signing, Anders shall complete and deliver the attached Schedule A identifying every other claim, complaint, grievance, demand, or asserted basis for personal civil relief against any Released Party of which he is actually aware, whether filed, unfiled, threatened, communicated, or presently contemplated and whether arising inside or outside the employment relationship, including any additional known basis on which he intends to seek personal relief. For each, he shall identify the person or entity involved, a concise factual basis, the approximate relevant dates, the relief sought or amount if known, and any court, arbitration, case number, and status. He need not provide a legal analysis, speculate about unknown claims, waive privilege, or investigate facts beyond his present knowledge. If there are no additional disclosable claims, he shall write "None." A blank schedule is not a representation that no claims exist. Anders has completed Schedule A and delivers it with this Agreement.

4.6 Certification and treatment of disclosed claims.

By signing Schedule A and this Agreement, Anders represents that the schedule is complete and accurate to his actual knowledge, subject to Section 4.4. If he learns before the last Party signs that a material entry is incomplete or inaccurate, he shall promptly supply a corrected schedule for all Parties to acknowledge. Listing a claim does not reserve it: every listed or unlisted claim otherwise within Section 4.2 is released on the Completion Date unless all Parties expressly exclude it in a signed amendment approved by the Court when required. A claim excluded by law or Section 4.4 remains excluded whether listed or not. For any additional pending private action involving a released claim, the Parties shall agree before execution on any necessary dismissal procedure and obtain any required approval from that tribunal. No Party can dismiss claims owned by nonparties.

4.7 Judicial review and remedies.

The Parties shall disclose the scope of this general release and Schedule A to the Court as necessary for fair review, using lawful redaction or sealing procedures where warranted. They shall identify any separately negotiated consideration supporting the broader release; this Section does not represent that overdue wages alone provide sufficient consideration for unrelated claims. The Additional Consideration in Section 2.2 is the separately negotiated consideration

supporting the release of claims beyond the unpaid wages, and the Parties shall so state to the Court. A material change required by the Court remains subject to Section 3. Any alleged knowing material misrepresentation in the disclosure shall be addressed only through lawful remedies; there is no automatic penalty, repayment of earned wages, unilateral payment offset, or liability for protected reporting, truthful testimony, a good-faith error, or failure to disclose an unknown claim.

**5 Mutual release by Defendants**

Effective on the Completion Date and to the fullest extent lawfully permitted, FME, Blackman, and Vyushin, each for itself or himself and for every Released Party that it or he owns or controls, release and forever discharge Anders, and any entity owned by Anders, from all claims, demands, causes of action, liabilities, debts, obligations, and damages, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising from acts, omissions, transactions, or events occurring on or before the Execution Date, including claims arising from Anders's employment, the Prior Agreements, confidentiality, ownership or return of property, non-disparagement, alleged misappropriation, and Anders's assertion or prosecution of the wage, contract, and fraud claims in the Action through the Execution Date, including private claims for litigation-related damages, fees, or costs. This reciprocal undertaking does not release enforcement of this Agreement or claims arising from acts or omissions after the Execution Date. Anders represents that, to his knowledge, he has not used and will not use FME Property, as that term is defined in the Employment Agreement, for any commercial purpose or for the benefit of a competitor of FME. His retention of copies of his own employment and compensation records, his communications, and materials relevant to the Action, to *Starling v. Allstate Insurance Company*, or to any other pending or reasonably anticipated proceeding is not a breach of this Agreement or of any surviving obligation and is governed by Section 8. No admission is imposed on Anders.

**6 Dismissal with prejudice and costs**

Within three business days after the Completion Date, the Parties shall cause all claims in the Action against all three Defendants to be dismissed with prejudice, by the Court's order or a procedurally proper Rule 41 filing. Any stipulation must be signed by all parties who have appeared, through counsel where required. The dismissal shall provide that each side bears its own attorney's fees for the Action and, except for the costs reimbursed as Additional Consideration under Section 2.2, its own costs, subject to any statutory determination or condition of approval made by the Court. The Parties shall disclose any outstanding fee claim to the Court; none is silently assigned a zero value.

If any default, default judgment, lien, or pending request for relief exists in the Action, the Parties shall obtain the required court order or file the appropriate satisfaction or withdrawal to give effect to the settlement. This clause does not represent that any such item exists. No judgment is vacated merely by signing this Agreement. Until a court order or effective filing changes them, procedural deadlines remain in force.

**7 Termination of prior restrictive covenants and lawful testimony**

Effective on the Completion Date, the following provisions of the Prior Agreements are terminated and released and impose no further obligation on Anders: Sections 7 and 16.L of the Employment Agreement; the confidentiality, non-use, and return obligations of Section 8 of the

Employment Agreement (its ownership and work-made-for-hire provisions are not affected); and Sections 1.05 and 1.12 and paragraphs (x) and (xi) of the Representations, Warranties and Covenants in the Agreement and Release. In their place, Anders agrees that he will not disclose to a competitor of FME or AVLAN PR LLC, or use for a commercial purpose, information that qualifies as a trade secret of FME or AVLAN PR LLC under applicable federal and Wyoming trade secret law, for as long as it remains a trade secret. No other restriction on Anders's speech, employment, or use of his own skills, knowledge, and experience is imposed. No Party shall make a knowingly false statement of fact about another Party; no other restriction on criticism or comment is imposed on any Party. The Parties do not agree that every subject learned during employment is confidential. The amount and terms of this settlement may be disclosed for judicial review and are not subject to a new secrecy requirement.

Nothing in this Agreement or any surviving obligation prohibits truthful testimony; compliance with a subpoena, court order, or other legal duty; protected reporting of suspected violations; communications with or participation in proceedings of government agencies; protected concerted activity or lawful discussion of wages and working conditions; seeking independent legal advice; or receiving a government award where waiver is prohibited. No permission or prior notice is required for legally protected agency reporting or for compliance with legal process. No Party shall request false, incomplete, misleading, or evasive testimony, concealment of relevant evidence, or nonattendance in violation of lawful process.

No Payment, Additional Consideration, release, dismissal, forfeiture, reimbursement, or remedy under this Agreement depends on Anders's testimony, noncooperation with another litigant, or the outcome of *Starling v. Allstate Insurance Company*, No. 1:25-cv-04000 (N.D. Ill.), or related proceedings. Lawful testimony and protected disclosures shall not constitute a breach or basis for damages. FME's October 5, 2026 letter concerning Anders's Section 7 notice is addressed separately and is not part of this Agreement; after the Completion Date, the notice requirement of Section 7 of the Employment Agreement no longer applies.

Under 18 U.S.C. § 1833(b), an individual has immunity from federal and state trade-secret liability for a disclosure made in confidence to a government official or attorney solely to report or investigate a suspected legal violation, or in a court filing under seal. An individual pursuing a retaliation claim for reporting a suspected violation may disclose the trade secret to counsel and use it in the proceeding if documents containing it are filed under seal and disclosure otherwise occurs only as authorized by court order.

**8 Evidence preservation and company materials**

Every Party shall preserve potentially relevant documents, messages, recordings, source code, logs, metadata, and other evidence relating to pending or reasonably anticipated proceedings. No deletion, alteration, concealment, or destruction is required or authorized by this settlement or a prior return-of-property provision. Any return, sequestration, or later deletion of company materials shall occur only under a documented protocol consistent with preservation duties and applicable court orders. Preservation does not authorize commercial use of another person's confidential information or access to systems without authorization.

**9 Enforcement, consent to jurisdiction and service, and governing law**

Wyoming law governs this Agreement, subject to controlling federal law. Each Defendant consents to the personal jurisdiction of the United States District Court for the District of

Wyoming and of the courts of the State of Wyoming for any action to enforce this Agreement and for the Action, and waives any objection to venue there. The Parties shall ask the Court to retain jurisdiction to enforce this Agreement in any order of dismissal. Each Defendant agrees that service of process in any action to enforce this Agreement, and service of any paper in the Action, may be made by email to that Defendant's address in Section 10, with a copy by first-class mail to the mailing address stated in Section 11, and that service so made is complete on sending unless the sender receives a failure or bounce notice for every listed email address. This Agreement does not itself create federal subject-matter jurisdiction.

If the Additional Consideration is not received in full by the deadline in Section 2.4, Anders may, at his election and by written notice, either terminate the uncompleted settlement and continue the Action, with all payments received credited and no double recovery, or enforce this Agreement. FME and Blackman consent, jointly and severally, to entry of judgment against them in the Action or in any court of competent jurisdiction for the unpaid balance of the Additional Consideration, plus interest at eighteen percent per annum from the payment deadline and the costs of enforcement. No confidentiality allegation permits unilateral withholding. After the Completion Date, the released claims remain released, and any later breach is addressed through lawful enforcement remedies. In any action to enforce this Agreement, the prevailing party recovers reasonable attorney's fees and costs.

**10 Authority, waivers of service, and complete agreement**

Each Party signs voluntarily after an opportunity to consult independent counsel. Anders is advised in writing to consult an attorney before signing. No Party represents that another Party already consulted counsel. Each signatory for FME represents authority to bind it, including any authority required for winding up if FME is dissolved. Blackman and Vyushin each sign personally; neither is bound solely by another person's signature.

Concurrently with delivering his signed counterpart, each of Blackman and Vyushin shall deliver to Anders a signed Waiver of the Service of Summons (form AO 399) in the Action, which Anders may file. The waivers take effect on delivery and remain effective whether or not the settlement is completed, so that no Party need serve or avoid a summons if the Action continues. The Parties shall jointly ask the Court to set the individual Defendants' deadline to respond to the Complaint at thirty days after any termination of this Agreement under Section 3 or Section 9, and Anders shall not seek a default against either individual Defendant while this Agreement is in effect. Vyushin shall state in Section 11 a current residential or business mailing address at which he will accept mail.

If signed counterparts of every Defendant and both waivers of service are not delivered to Anders by October 28, 2026, this proposal is withdrawn unless Anders extends the date in writing.

This Agreement contains the entire settlement of the matters it addresses and replaces conflicting settlement discussions. It supersedes prior payment, release, and enforcement provisions only to the extent expressly stated; all surviving duties remain subject to Sections 7 and 8. Amendments require all Parties' signed written consent. Electronic signatures and counterparts are valid. An invalid collateral term may be severed, but no court-approval condition, payment amount, or material release is rewritten without the affected Parties' written consent.

Notices under this Agreement may be sent by email to Anders at legal@joshanders.com; to FME and Blackman at ryan@ehva.ai and ryan.blackman@gmail.com; and to Vyushin at viktor@avlanpr.com, in each case with a copy by first-class mail to the mailing address stated in Section 11. Counsel's designated addresses may be substituted by written notice. A notice is effective when sent to every listed email address for the recipient unless the sender receives a failure or bounce notice for all of them. Service and filing obligations imposed by court rules remain separate except as provided in Section 9.

## 11 Signatures

Joshua AndersIndividual capacity
Signature: _______________ Date: 10 / 26 / 2026
Mailing address: 655 W Irving Park Rd, Apt 2811, Chicago, IL 60613.
Email: legal@joshanders.com

FME Employment LLC
By Ryan Daniel Blackman, authorized representative

Title or winding up capacity: Member
Signature: Ryan Daniel Blackman Date: 10 / 26 / 2026

Mailing address: 34 N Franklin Ave, Ste 687-1845, Pinedale, WY 82941.
Email: ryan@ehva.ai

Ryan Daniel Blackman also known as Ryan Daniel Individual capacity
Signature: Ryan Daniel Blackman Date: 10 / 26 / 2026 Mailing address:
425 Carr 693, Ste 1-348, Dorado, PR 00646.
Emails: ryan@ehva.ai and ryan.blackman@gmail.com

Viktor Vyushin
Individual capacity
Signature: Viktor Vyushin Date: 10 / 26 / 2026
Mailing address: 34 N Franklin Ave, Ste 687-1845, Pinedale, WY 82941.
Email: viktor@avlanpr.com

**Schedule A Disclosure of Other Known Claims**

Completed by Anders and delivered with this Agreement. This schedule is incorporated into Section 4. Sections 4.4 through 4.7 govern its scope, exceptions, accuracy, and effect. It does not include privileged material or legally protected confidential reporting.

Existing Action already disclosed: Anders v. FME Employment LLC, Ryan Daniel, and Viktor Vyushin, No. 2:26-cv-00136-KHR, United States District Court for the District of Wyoming. The five claims pleaded in the Complaint are not repeated here.

Other disclosable claims, complaints, grievances, or demands:

1. Anders v. FME Employment LLC, Ryan Daniel, Viktor Vyushin, and First Technology Federal Credit Union, Court of Common Pleas, Charleston County, South Carolina, No. 2024CP1005415. Wage and related claims arising from the same employment and nonpayment described in Section 1, seeking the unpaid wages and related damages. Filed in 2024 and voluntarily dismissed without prejudice under S.C. R. Civ. P. 41(a)(1) on September 12, 2025. Nothing is pending and no further dismissal procedure is required.

2. Complaint to the United States Department of Labor, Wage and Hour Division, filed August 28, 2024, concerning unpaid wages for August 1 through 12, 2024. The Division's letter of October 17, 2024 (Complaint Exhibit E) closed the matter without payment and preserved Anders's right to sue. Nothing is pending.

3. Inquiry to the South Carolina Department of Labor, Licensing and Regulation in October 2024 concerning the same unpaid wages, which that agency declined on October 18, 2024 for lack of jurisdiction (Complaint Exhibit F). Nothing is pending.

4. None other. Anders has not asserted, threatened, or communicated, and does not presently contemplate, any other claim, complaint, grievance, or demand for personal civil relief against any Released Party. Anders's compliance with a subpoena in *Starling v. Allstate Insurance Company* is not a claim of his and is not a disclosable item.

I certify that this schedule is complete and accurate to my actual knowledge, subject to the exceptions and limitations in Section 4. I understand that listing a claim does not reserve it from the release. Any express reservation requires the signed amendment described in Section 4.6.

Joshua Anders

Signature: Joshua Anders Date: 10 / 26 / 2026

Receipt and incorporation acknowledged

FME representative initials: RB Blackman initials: RB Vyushin initials: VV

Dropbox Sign

Audit trail

| | |
|---|---|
| **Title** | Joshua Anders - Settlement Agreement and Release |
| **File name** | Joshua_Anders_-_S...elease_-_v5.1.pdf |
| **Document ID** | b6071d7ebf50ae44c83c180a5c6090a1b5001706 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| SENT | **10 / 26 / 2026**<br>14:17:43 UTC | Sent for signature to Ryan Daniel (ryan@ehva.ai), Viktor Vyushin (viktor@avlanpr.com) and Joshua Anders (legal@joshanders.com) from viktor@ehva.ai<br>IP: 98.47.88.101 |
| VIEWED | **10 / 26 / 2026**<br>14:17:59 UTC | Viewed by Ryan Daniel (ryan@ehva.ai)<br>IP: 196.42.9.98 |
| SIGNED | **10 / 26 / 2026**<br>14:18:53 UTC | Signed by Ryan Daniel (ryan@ehva.ai)<br>IP: 196.42.9.98 |
| VIEWED | **10 / 26 / 2026**<br>14:19:34 UTC | Viewed by Viktor Vyushin (viktor@avlanpr.com)<br>IP: 98.47.88.101 |
| SIGNED | **10 / 26 / 2026**<br>15:35:02 UTC | Signed by Viktor Vyushin (viktor@avlanpr.com)<br>IP: 98.47.88.101 |

Dropbox Sign

Audit trail

| | |
|---|---|
| **Title** | Joshua Anders - Settlement Agreement and Release |
| **File name** | Joshua_Anders_-_S...elease_-_v5.1.pdf |
| **Document ID** | b6071d7ebf50ae44c83c180a5c6090a1b5001706 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| VIEWED | **10 / 26 / 2026**<br>15:44:45 UTC | Viewed by Joshua Anders (legal@joshanders.com)<br>IP: 207.181.247.241 |
| SIGNED | **10 / 26 / 2026**<br>15:53:11 UTC | Signed by Joshua Anders (legal@joshanders.com)<br>IP: 207.181.247.241 |
| COMPLETED | **10 / 26 / 2026**<br>15:53:11 UTC | The document has been completed. |